**Jeffrey G. Bradford**, OSB No. 133080
jeff.bradford@tonkon.com
**TONKON TORP LLP**
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Telephone: (503) 802-5724
Facsimile: (503) 274-8779

**Lauri A. Mazzuchetti**, *Pro Hac Vice*
lmazzuchetti@kelleydrye.com
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

**Damon W. Suden**, *Pro Hac Vice*
dsuden@kelleydrye.com
**Frances V. McDonald,** *Pro Hac Vice*
fmcdonald@kelleydrye.com
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7987

*Attorneys for Defendant Cirkul, Inc.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| **CHET MICHAEL WILSON**, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>**CIRKUL, INC.**,<br><br>　　　　　Defendant. | Civil No. 6:25-cv-02036-AP<br><br>**DEFENDANT CIRKUL'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

**L.R. 7-1 COMPLAINCE**

Pursuant to L.R. 7-1, counsel for defendant Cirkul, Inc. ("Cirkul") certifies that the parties made a good faith effort via videoconference on January 21, 2026, to resolve this dispute but have been unable to do so.

**MOTION**

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant Cirkul moves this Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. As support for this Motion, Cirkul provides the below memorandum of law.

**MEMORANDUM OF POINTS AND AUTHORITIES**

For the below reasons, Cirkul moves to dismiss the Complaint filed by Plaintiff Chet Michael Wilson.

**I.     INTRODUCTION**

This action is one of numerous putative class lawsuits filed by serial litigant plaintiff Chet Michael Wilson ("Plaintiff") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Here, Plaintiff's TCPA claim is predicated upon six text messages he allegedly received from Cirkul. He asserts one cause of action under the TCPA, claiming that the alleged text messages were sent to Plaintiff's number without his consent while his cell phone was registered on the National Do Not Call Registry. Plaintiff's Complaint, however, is legally deficient because Section 227(c), the statutory provision of the TCPA on which Plaintiff relies, does not extend to either cellular telephone numbers or text messages. Indeed, the private right of action that Plaintiff invokes only permits relief for "telephone calls" to "residential telephone subscribers" and, following the Supreme Court's decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the court's focus should be on reviewing the

statutory language—not any deference to administrative agencies, such as the Federal Communications Commission ("FCC"). Even if the relevant provisions of the TCPA applied to the claims Plaintiff has asserted (which they do not), his serial litigant status demonstrates that he is using his 9999 number as a vehicle to manufacture lawsuits. Accordingly, the phone number is a business—not a residential—phone number.

Because Plaintiff cannot plead facts sufficient to overcome the TCPA's plain language, statutory structure, or legislative history, he cannot plausibly state a claim for relief under the statute. Accordingly, Plaintiff's Complaint should be dismissed.[1]

## II.    FACTUAL BACKGROUND

Plaintiff alleges that he received "at least six text messages" to his cellular telephone number, (541) XXX-9999 (the "9999 Number") on unspecified dates during "September and October 2025." (Dkt. No. 1, Complaint ("Compl.") ¶¶ 19–20.) Plaintiff claims these messages were sent by Cirkul, in an allegedly unlawful effort "to advertise and market [Cirkul's] business or services." (*Id.* ¶ 24.) Plaintiff further asserts that he was "the subscriber to and customary user of his cellular telephone number" and that he registered the 9999 Number with the National Do Not Call Registry on an unidentified date, which he claims was "at least 30 days prior to receiving the [text messages] at issue." (*Id.* ¶¶ 10, 18.)

Plaintiff acknowledges that "[t]he subject text messages were intended for someone other than, and unknown to, Plaintiff." (*Id.* ¶ 23.) In fact, the text messages alleged in the Complaint include automated abandoned-cart messages and offers to an existing customer to earn and redeem

---

[1]    Should this Court decline to dismiss the case for failure to state a claim, Cirkul respectfully reserves the right to enforce any applicable arbitration agreement with Plaintiff, and to seek limited discovery in connection with any such motion.

reward points. (*Id.* at ¶ 21.)[2] Despite admitting that the texts were not intended for him, Plaintiff does not allege that he ever responded "Stop" to the messages, blocked receipt of the messages on his device, or otherwise attempted to opt out from additional Cirkul communications. (*See generally id.*) Nevertheless, despite taking no steps to prevent receipt of the messages, Plaintiff claims that the texts caused him "actual harm," including an "invasion of privacy, an intrusion into his life, and a private nuisance." (*Id.* ¶ 27.)

In fact, since early 2024, Plaintiff has filed at least 73 lawsuits based on the receipt of similar text messages[3], demonstrating familiarity with both the nature of such communications and

---

[2]   Plaintiff therefore all but concedes that someone else provided the 9999 Number and gave consent to receive text messages. If the case continues, discovery will show that Cirkul believed in good faith that it had an established business relationship and consent to text the 9999 Number. *See* 47 CFR 64.1200(f)(15)(i)–(ii).

[3]   *Wilson v. Altria Grp. Distrib. Co.*, No. 1:24-cv-01917 (E.D. Va. filed Oct. 29, 2024); *Wilson v. Pro. Credit Serv.*, No. 6:24-cv-01826 (D. Or. filed October 31, 2024); *Wilson v. Elevate Patient Fin. Solutions, LLC*, No. 4:24-cv-4285 (S.D. Tex. filed November 4, 2024); *Wilson v. Avid Ratings, Inc.*, No. 3:24-cv-00782 (W.D. Wis. filed November 4, 2024); *Wilson v. Nationstar Mortg.*, No. 6:24-cv-01855 (D. Or. filed November 7, 2024); *Wilson v. Pacificorp*, No. 6:24-cv-01956 (D. Or. filed November 21, 2024); *Wilson v. Credit Suite*, No. 8:24-cv-02711 (M.D. Fla. filed November 21, 2024); *Wilson v. The Sav. Bank Mut. Life Ins.*, No. 1:24-cv-12950 (D. Mass. filed November 26, 2024); *Wilson v. Disability Help Grp.*, No. 0:24-cv-62319 (S.D. Fla. filed December 7, 2024); *Wilson v. S. Oregon Credit Serv.*, No. 1:24-cv-02087 (D. Or. filed December 17, 2024); *Wilson v. Lower, LLC*, No. 1:24-cv-03665 (D. Md. filed December 18, 2024); *Johnson v. American Home Shield Co.*, No. 1:24-cv-02339 (E.D. Va. filed December 20, 2024); *Wilson v. Fairway Indep. Mortg. Corp.*, No. 3:24-cv-00924 (W.D. Wis. filed December 27, 2024); *Wilson v. Icon Creative Consulting*, No. 1:24-cv-25117 (S.D. Fla. filed December 30, 2024); *Wilson v. Icon Creative Consulting*, No. 1:24-cv-25119 (S.D. Fla. filed December 30, 2024); *Wilson v. Club 1 Hotels, LLC*, No. 1:25-cv-00003 (N.D. Ill. filed January 2, 2025); *Wilson v. Aum Ins. Serv. LLC*, No. 3:25-cv-260 (N.D. Cal. filed January 7, 2025); *Wilson v. Zillow Inc.*, No. 2:25-cv-00048 (W.D. Wash. filed January 8, 2025); *Wilson v. Centennial Med. Grp. E.*, No. 6:25-cv-00043 (D. Or. filed January 9, 2025); *Wilson v. Kuiu, LLC*, No. 2:25-cv-212 (E.D. Cal. filed January 15, 2025); *Wilson v. LeafFilter N., LLC*, No. 2:25-cv-00039 (S.D. Ohio filed January 16, 2025); *Wilson v. Easy Spirit*, No. 3:25-cv-00112 (D. Conn. filed January 22, 2025); *Wilson v. Blendjet Inc.*, No. 2:25-cv-278 (E.D. Cal. filed January 23, 2025); *Wilson v. Kaiser Found. Health Plan, Inc.*, No. 3:25-cv-802 (N.D. Cal. filed January 23, 2025); *Wilson v. FuturHealth*, No. 3:25-cv-00157 (S.D. Cal. filed January 23, 2025); *Wilson v. Trajector Inc.*, No. 1:25-cv-00023 (N.D. Fla. filed January 23, 2025); *Wilson v. Hard Eight Nutrition*, No. 6:25-cv-00144 (D. Or. filed January 28, 2025); *Wilson v. CMRE Fin. Servs.*, No. 6:25-cv-00152 (D. Or. filed January 28, 2025); *Wilson v. Finmax Smart Cap. LLC*, No. 6:25-cv-00173 (D. Or. filed January 31, 2025); *Wilson v. Fleet Fin.*, No. 1:25-cv-00340 (D. Colo. filed January 31, 2025); *Wilson v. Pharmacenter LLC*, No. 0:25-cv-60212 (S.D. Fla. filed February 6, 2025); *Wilson v. Blue Moon Fabrics, Inc.*, No.6:25-cv-003330 (D. Or. filed February 27, 2025); *Wilson v. Skopos Fin.*, No. 6:25-cv-00376 (D. Or. filed March 4, 2025);

the readily available mechanism to stop them. In this respect, Plaintiff is not representative of an ordinary consumer who, if genuinely troubled by such messages, would simply opt out rather than continually receive additional communications for the purpose of bringing litigation.

Plaintiff seeks to proceed on a putative class basis on behalf of all individuals in the United States with phone numbers registered to the National Do Not Call Registry who allegedly received more than one voice message or text message from Cirkul within the last four years. (*Id.* ¶ 29.)

---

*Wilson v. Consumer Cellular Inc.*, No. 2:25-cv-00745 (D. Ariz. filed March 4, 2025); *Wilson v. Norco, Inc.*, No. 6:25-cv-00410 (D. Or. filed March 9, 2025); *Wilson v. LeafFilter N., LLC*, No. 5:25-cv-00522 (N.D. Ohio filed March 17, 2025); *Johnson v. American Home Shield Corp.*, No. 2:25-cv-02347 (W.D. Tenn. filed March 27, 2025); *Wilson v. Roman Health Ventures Inc.*, No. 1:25-cv-03479 ( S.D.N.Y. filed April 27, 2025); *Wilson v. Mountainside Fitness Acquisition LLC*, No. 2:25-cv-01481 (D. Ariz. May 1, 2025); *Wilson v. Craftie Fox*, No. 1:25-cv-22069 (S.D. Fla. filed May 5, 2025); *Wilson v. Medvidi Inc.*, No. 5:25-cv-3996 (N.D. Cal. filed May 8, 2025); *Wilson v. MAH Grp.*, No. 6:25-cv-00855 (D. Or. filed May 19, 2025); *Wilson v. Better Mortg. Corp.*, No. 1:25-cv-05503 (S.D.N.Y. filed July 2, 2025); *Wilson v. Inogen*, No. 6:25-cv-01168 (D. Or. filed July 6, 2025); *Wilson v. Amp Fit, Inc.*, No. 5:25-cv-5656 (N.D. Cal. filed July 6, 2025); *Wilson v. Atlanta Med. Day Spa and Surgery*, No. 1:25-cv-04023 (N.D. Ga. filed July 21, 2025); *Wilson v. Home Warranty of America*, No. 6:25-cv-01331 (D. Or. filed July 29, 2025); *Wilson v. Roof Max Tech. LLC*, No. 2:25-cv-00872 (S.D. Ohio filed August 8, 2025); *Wilson v. Nat'l Gen. Ins. Co.*, No. 1:25-cv-00719 (M.D.N.C. filed August 7, 2025); *Wilson v. Liberty Home Guard LLC*, No. 1:25-cv-01075 (N.D.N.Y. filed August 11, 2025); *Wilson v. Tabak Law LLC*, No. 2:25-cv-01197 (E.D. Wis. filed August 11, 2025); *Wilson v. Monarch Recovery Mgmt., Inc.*, No. 2:25-cv-04845 (E.D. Penn. filed August 24, 2025); *Taylor et al v. Savvy Ins., Sol., LLC*, No. 1:25-cv-12393 (D. Mass. filed August 29, 2025); *Wilson v. Lifestation, Inc.*, No. 1:25-cv-07246 (S.D.N.Y filed August 30, 2025); *Wilson v. Inbox Health Corp.*, No. 3:25-cv-01417 (D. Conn. filed September 2, 2025); *Wilson v. Disability Serv. of America, LLC*, No. 1:25-cv-10578 (N.D. Ill. filed September 3, 2025); *Wilson v. McNeil & Meyers Receivables*, No. 2:25-cv-01810 (E.D. Louis. filed September 4, 2025); *Wilson v. Vozzcom*, No. 0:25-cv-61793 (S.D. Fla. filed September 5, 2025); *Wilson v. MIA Aesthetics Holdings*, No. 1:25-cv-24103 (S.D. Fla. filed September 9, 2025); *Wilson v. TRA Med. Imaging Found.*, No. 3:25-cv-05808 (W.D. Wash. filed September 10, 2025); *Wilson v. Nissan N. America Inc.*, No. 3:25-cv-01042 (M.D. Tenn. filed September 16, 2025); *Wilson v. Get Away Today*, No. 6:25-cv-01716 (D. Or. filed September 23, 2025); *Wilson v. TPH Paralegal Pro. Corp.*, No. 6:25-cv-01703 (D. Or. filed September 23, 2025); *Wilson v. Amp Fit, Inc.*, No. 3:25-cv-01741 (D. Or. filed September 25, 2025); *Wilson v. Lumen Tech. Inc.*, No. 3:25-cv-01471 (W.D. Louis. filed October 2, 2025); *Wilson v. Freeway Ins. Serv. of America*, No. 6:25-cv-01869 (D. Or. filed October 12, 2025); *Wilson v. GameChanger 247*, No. 6:25-cv-01870 (D. Or. filed October 12, 2025); *Wilson v. Salespromis*, No. 0:24-cv-62319 (S.D. Fla. filed October 14, 2025); *Wilson v. Cont'l Tire The Americas, LLC*, No. 6:25-cv-02052 (D. Or. filed November 4, 2025); *Wilson v. Mortgage One, Inc.*, No. 3:25-cv-3648 (S.D. Cal. filed December 17, 2025); *Wilson v. Autoweb, Inc.*, No. 3:26-cv-0039 (N..D. Cal. filed January 4, 2026); *Wilson v. Anytime Fitness Franchisor, LLC*, No. 6:26-cv-0019 (D. Or. filed January 6, 2026); *Wilson v. Yakima Valley Farm Workers Clinic*, No. 1:26-cv-3003 (E.D. Wash. filed January 7, 2026).

Plaintiff also seeks statutory damages under 47 U.S.C. § 227(c)(5), based on Cirkul's alleged violations of the regulations set forth in 47 C.F.R. § 64.1200. (*Id.* ¶¶ 57–65.)

### III.     ARGUMENT

#### A.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must credit well-pleaded factual allegations, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Dismissal is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation omitted) (dismissing TCPA claim).

#### B.     Plaintiff's Complaint Should Be Dismissed Because Section 227(c) of the TCPA Applies Only to Telephone Calls to Residential Telephone Subscribers

Plaintiff's sole claim, brought under Section 227(c)(5) of the TCPA, fails as a matter of law because that provision does not apply to text messages or cell phones, but only to "telephone calls" made to "residential telephone subscribers." 47 U.S.C. § 227(c)(5) (providing a private right of action based on the alleged receipt of "*more than one telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations" prescribed under Section 227(c) of the TCPA) (emphasis added); 47 U.S.C. § 227(c)(1) (authorizing the FCC to "initiate a rulemaking proceeding concerning the need to protect *residential telephone subscribers'* privacy[.]") (emphasis added). The corresponding federal regulation similarly provides that "[n]o person or entity shall initiate any telephone solicitation to . . . *[a] residential telephone subscriber* who has registered his or her telephone number on the [DNC Registry][.]" 47 C.F.R. §

64.1200(c)(2) (emphasis added).  Plaintiff's claim fails on both elements, as set forth below.

### 1.     The TCPA's DNC Provisions Do Not Apply to Text Messages

In *McKesson*, the Supreme Court held that district courts "must determine the meaning of the law under ordinary principles of statutory interpretation," rather than defer to agency views. 606 U.S. at 155.  Based upon the statutory language itself, the result is plain—the TCPA's Do Not Call provisions do not apply to text messages.

Cirkul recognizes, however, that the Ninth Circuit has addressed this issue in the context of other provisions of the TCPA and reached a contrary conclusion.  In *Satterfield v. Simon & Schuster, Inc.*, the Ninth Circuit considered a Section 227(b) claim[4] and, applying *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), held that courts "must defer" to the FCC's determination that a "text message" was a "call" under the TCPA.  569 F.3d 946, 954 (9th Cir. 2009).  More recently, the Ninth Circuit opined, also in the context of TCPA Section 227(b), that "it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference."  *Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273, at *4 (9th Cir. Jan. 13, 2026).  The Ninth Circuit's decision in *Howard*, however, was also limited to claims asserted under Section 227(b), rather than claims under Section 227(c), as in the instant matter.[5]  Therefore, *Howard*'s reasoning does not govern the Section 227(c) claim at

---

[4]     "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  *Satterfield*, 569 F.3d at 950 (quoting 47 U.S.C. § 227(b)(1)(A)(iii)).

[5]     The briefing in *Howard* did not address the issue presented here—whether Section 227(c)(5)'s private right of action applies to text messages.  Accordingly, the Ninth Circuit did not have the benefit of the analysis set forth herein.

issue.

### a. District Courts Have Held That Section 227(c)(5) Does Not Apply to Text Messages Post-*McKesson*

Section 227(c)(5) states that it applies to persons who receive at least two "telephone calls." *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1275–76 (N.D. Fla. 2025) (quoting 47 U.S.C. § 227(c)(5)). As the District Court recognized in *Davis* when dismissing the plaintiff's text message-based claim under Section 227(c)(5), "[c]ertainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Id.* at 1273. Moreover,

> [n]o normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Id.*; *see also id.* at 1275 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (cleaned up))).

The Central District of California recently reached a similar conclusion in *Dilanyan v. Hugo Boss Fashions, Inc.*, despite believing it was constrained by *Satterfield*.[6] Notwithstanding this belief, the *Dilanyan* court nevertheless conducted its own analysis, reasoning that "telephone calls and text messages are two distinct forms of communication—one involves speaking with or attempting to speak with someone in real time, and the other involves a one-way, often written communication." No. 2:25-cv-05093, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025). Finding

---

[6] As discussed above, *Satterfield* is distinguishable given that it was addressing an entirely separate provision of the TCPA.

this textual and the cited authority persuasive, the District Court in *Dilanyan* certified its denial of the motion to dismiss for interlocutory appeal. *Id.* at *3–4.[7]

Other courts, particularly following the Supreme Court's decisions in *McKesson* and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), have also dismissed TCPA claims involving text messages based on a plain reading of the language of the statute. For instance, in *Jones v. Blackstone Med. Servs., LLC*, the District Court dismissed the plaintiff's Section 227(c) claim, noting that "[t]ext messaging was not an available technology" when the statute was enacted "in 1991, and thus 'telephone call' would not have included text messages or SMS messages." 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) (citing Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/). The District Court in *Sayed v. Naturophathica Holistic Health, Inc.* likewise held that "[i]n addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla Oct. 24, 2025).

Moreover, and as noted by the District Court in *Sayed*, the TCPA has been amended numerous times since its enactment in 1991, but it was not until 2018—through Pub. L. 115-141—that Congress first defined the term "text message" in the TCPA at § 227(e)(8)(C). This amendment reflects Congress's recognition of text messaging as a distinct mode of communication

---

[7] The interlocutory appeal has not yet been accepted by the Ninth Circuit. As such, Cirkul requests that, in the alternative, this Court certify the question of whether "text messages" are "telephone calls" under Section 227(c)(5) of the TCPA for immediate interlocutory appeal. *See infra* Section VI.B.1.b.

from telephone calls (which involve voice communications). Congress specifically directed that the term "text message . . . ***does not include*** . . . a real time, two-way voice . . . communication." 47 U.S.C. § 227(e)(8)(C)(iii) (emphasis added). Notably, Congress did not amend the definition of "telephone solicitation" to incorporate the new definition of "text message," nor did it reference or apply that definition to any component of Section 227(c). Instead, it left the statutory language unchanged—reflecting Congress's understanding that "call," refers to a voice telephone call.

As such, Plaintiff should not be able to proceed on a claim under Section 227(c)(5) based on text messages—as opposed to telephone calls.

        **b.**      **Alternatively, the Court Should Certify the Question of Whether "Text Messages" are "Telephone Calls" Under Section 227(c)(5) for Immediate Interlocutory Appeal**

As explained above, Cirkul maintains that the term "telephone call" is unambiguous and that the Ninth Circuit's decisions in *Satterfield* and *Howard* are not binding in the instant dispute, which involves alleged text messages only. Moreover, the decision to extend Section 227(c)(5) to text messages is one for Congress, not the courts. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021).

If this Court nonetheless believes *Satterfield* or *Howard* should apply to Section 227(c)(5), Cirkul respectfully submits that the Court should certify its order for immediate interlocutory appeal. Whether a text message constitutes a "telephone call" under Section 227(c)(5) presents a controlling, purely legal question of statutory interpretation. *See* 28 U.S.C. § 1292(b); *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). No factual development is required, and resolution of this issue would be dispositive: if a text message is not a "telephone call," Plaintiff's claim necessarily fails.

Substantial grounds for difference of opinion also exist. A question qualifies where "fair-

minded jurists might reach contradictory conclusions," and courts need not await conflicting precedent to so conclude, particularly where novel issues of first impression are involved. *See ICTSI*, 22 F.4th at 1130–31; *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). This case squarely meets that standard. It raises the unsettled question of whether interpretations of Section 227(b) extend to Section 227(c)(5), an issue made more acute by *Loper Bright*'s express rejection of *Chevron* deference and its instruction that any continued deference is limited to the specific agency action previously upheld. *See* 603 U.S. at 412. Further complicating matters, the Ninth Circuit has never definitively endorsed statutory stare decisis at the circuit level, and significant debate persists within the Circuit on this matter. *See Lopez v. Bondi*, 151 F.4th 1196, 1209 (9th Cir. 2025) (Bumatay, J., dissent).

Finally, immediate appellate review would materially advance the termination of this litigation. A ruling that text messages fall outside the scope of "telephone calls" under Section 227(c)(5) would end this case outright, conserving substantial judicial and party resources and providing needed clarity on a recurring issue in TCPA litigation. *See ICTSI*, 22 F.4th at 1130–31.

> **2.      The TCPA's DNC Provisions Apply Only to Residential Telephone Subscribers**

Plaintiff also fails to state a claim under Section 227(c) because that provision is limited to "redress of violations of the regulations that concern residential telephone subscribers." *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-cv-02921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018). "A cellular phone and a residential phone are not the same thing." *Moore v. Triumph CSR Acquisition, LLC*, No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023). As district courts have repeatedly found, "[c]ell phones do not present the same concerns as residential phones," as their "mobility and functionality to silence or decline calls alleviate the

concerns inherent with a home telephone." *Gaker v. Q3M Ins. Sols.*, No. 3:22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). In contrast, "a residential phone is a home phone that is hard-wired into the building. It means a land-line. It is *residential* in a very literal sense." *Moore*, 2023 WL 8601528, at *2.

### a. The Plain Text of Section 227(c) Does Not Include Cell Phones

At the time the TCPA was enacted in 1991, the term "residential" meant being "adapted or restricted to or occupied by residences" or "of, relating to, or connected with residence or residences." *Residential*, Webster's Third New Int'l Dictionary of the English Language Unabridged (1993). Under the plain text chosen by Congress, therefore, a "residential telephone" is "a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere." *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) (quoting Merriam-Webster). By limiting Section 227(c) to "residential" telephones (even while addressing cellular phones in other sections of the TCPA), Congress intended Section 227(c) to be limited to not include cell phones; "[t]hat is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400 (internal quotation omitted); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012) ("Legislation means today what it meant when enacted.").

Numerous other courts have reached the same result. *Moore*, 2023 WL 8601528, at *3 (dismissing Plaintiff's claim under section 227(b)(1)(B), which only applied to residential phones); *Morris v. Lincare, Inc.*, No. 8:22-cv-02048, 2023 WL 5336780, at *4 (M.D. Fla. Aug. 18, 2023) ("It is worth noting that courts use 'home phone' and 'residential telephone' to refer to the TCPA's language 'residential telephone line.' While these terms are used by courts interchangeably, they are distinct from cell phones."); *Worley v. Mun. Collections of Am., Inc.*, No. 1:14-cv-02418, 2015

WL 890878, at *3 (N.D. Ill. Feb. 27, 2015) ("One provision of the TCPA prohibits certain calls to cell phones, see 47 U.S.C. § 227(b)(1)(A)(iii), and another provision prohibits certain calls to residential phone lines, see 47 U.S.C. § 227(b)(1)(B).").

### b. The TCPA's Structure Distinguishes Between Cell Phones and Residential Phones

The structure of the TCPA shows that Congress did not intend Section 227(c) to apply to cell phones.[8] When courts interpret statutory text, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Here, "the TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Shelton*, 378 F. Supp. 3d at 362 n.7. This was no accident. Instead, Congress expressly considered the interests unique to cell phones when it enumerated "cellular" telephones in Section 227(b). *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 648 (2020) (Gorsuch, J., concurring in part) (explaining that Congress banned robocalls to cell phones "to address the problem" caused by "many cell phone users ha[ving] to pay for each call"). A co-sponsor of the TCPA also differentiated between "unsolicited automated calls to the home" and "automated calls to . . . cellular telephones." 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen). Had Congress intended for Section 227(c) to apply to cell phones, it could have done so. It did not, and "courts must presume that a legislature says in a statute what it means and means in a statute what it says

---

[8] As explained in Section VI.B.3., *infra*, in the wake of *Loper Bright,* this Court is not required to defer to Ninth Circuit decisions that relied on FCC guidance, such as *Chennette v. Porch.com*, 50 F.4th 1217 (9th Cir. 2022).

there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *see Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) ("Congress used different language to discuss cell phones and residential lines, further demonstrating that they are not interchangeable.").

The District Court in *Moore* applied a similar analysis to distinguish a cell phone from a residential phone. 2023 WL 8601528, at *2. In that case, the plaintiff sued under TCPA Section 227(b)(1)(B) for the alleged use of automatic dialing equipment for calls sent to her cell phone. *Id.* at *1. Subsection 227(b)(1)(B) applies only to a "residential telephone line," while "[a] neighboring provision, subsection 227(b)(1)(A)(iii), expressly covers 'cellular telephone service.'" *Id.* at *2. The Court held that "[t]he fact that the statute uses 'residential telephone line' and 'cellular telephone service' in close proximity is a strong clue that the two terms do not mean the same thing." *Id.* (citing *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (applying the "usual rule against ascribing to one word a meaning so broad that it assumes the same meaning as another statutory term"); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning.")). "The text and structure of the statute suggest that the different terms have different meanings." *Id.*

In reaching its decision, the *Moore* Court relied on the Supreme Court's decision in *Barr*, where the Supreme Court accepted "as a given" that "[a] cellular phone and a residential phone are not the same thing," in the context of the TCPA. *Id.* (noting "courts widely hold that a cell phone is not a 'residential telephone line'" under Section 227(b) and collecting cases). "[*Barr*] involved robocalls to a cell phone in violation of subsection 227(b)(1)(A)(iii) of the TCPA . . . . The Supreme Court noted that a different provision governs calls to residential phones." *Id.* (citing

*Barr*, 591 U.S. at 617, n.3 ("Plaintiffs have not challenged the TCPA's separate restriction on robocalls to home phones. *See* 47 U.S.C. § 227(b)(1)(B).")).

Other courts have also found Congress's distinction between "residential" and non-residential devices to be significant. *See Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-cv-00121, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022) (discussing the meaning of "residential telephone subscriber" under 47 C.F.R. § 64.1200(d)).  The same is true for the do-not-call provision, under which courts regularly find that Section 227(c)'s limitation to only residential telephone subscribers excludes complaints where "Plaintiff alleges only the use of his cellular phone[]." *Cunningham v. Politi*, No. 4:18-cv-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019), *report and recommendation adopted*, 2019 WL 2526536 (E.D. Tex. June 19, 2019) (collecting cases); *see also Gaker*, 2023 WL 2472649, at *3; *Sunshine Consulting Grp.*, 2018 WL 3496538, at *6; *Cunningham v. Spectrum Tax Relief LLC*, No. 3:16-cv-02283, 2017 WL 3222559, at *6 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.*, No. 3:15-cv-00847, 2017 WL 2719992, at *6 (M.D. Tenn. June 23, 2017).

Indeed, when interpreting statutory text without a definition, Courts should "construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant[.]" *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (internal quotation omitted).  Here, as discussed above, Congress distinguished "residential" devices and "cellular" devices in other sections of the TCPA, and distinguished text messages from telephone calls. *See, e.g.*, *Barr*, 591 U.S. at 617 n.3 (acknowledging the separate restrictions for cell phones and residential phones).  Under every mode of statutory construction, these terms cannot be read as one and the same.  By expressly confining Section 227(c) to

"residential telephone subscribers," Congress made plain that only those consumers may invoke its protections. Plaintiff does not fall within this category, and as such, has no statutory footing on which to base his claim.

### c. Plaintiff Uses the Telephone Number as a Business Tool, Not a Residential Line

Even if a cellular telephone could qualify as a "residential telephone" under Section 227(c) (it cannot), Plaintiff's actual use of the 9999 Number forecloses that possibility entirely. Plaintiff is a prolific TCPA litigant, having filed 73 TCPA lawsuits since early 2024 alone, all involving the same 9999 Number. *See* fn. 3, *supra*. Plaintiff's volume of lawsuits indicates that the 9999 Number is maintained as part of a litigation-driven enterprise, not for residential use. Courts evaluating TCPA claims have considered how a phone line is used in determining whether it is "residential," and a number maintained and monitored to generate statutory claims lacks any hallmark of residential use. *See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016) (holding that the "[p]laintiff's interests [were] not within the zone of interests intended to be protected by the TCPA," because [the] plaintiff "purchas[ed] cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages"). Here, as evidenced by his 73 lawsuits, Plaintiff has clearly made a business out of the 9999 Number. As such, Plaintiff cannot establish any reasonable expectation that the 9999 Number is used for residential purposes, placing it outside the TCPA's protections.[9] Because Plaintiff's 9999 Number is not covered under the plain text of Section 227(c), Plaintiff therefore fails to state a claim as a matter of law.

---

[9] If this case continues, discovery will show that the 9999 Number is associated with commercial business ventures, which would further undermine Plaintiff's theory of liability. *See*, *e.g.*, www.merchantcircle.com/second-wind-second-hand-store-harrisburg-or; *see also* www.yellow-pages.us.com/oregon/bend/seven-peaks-ventures-b28542641.

PAGE 16 – DEFENDANT CIRKUL'S MOTION TO DISMISS

### 3. The Court Need Not Defer to FCC Guidance or Case Law That Relied on Such Guidance

The Supreme Court in *Loper Bright* directed courts to interpret statutes to achieve "the reading the court would have reached if no agency were involved." 603 U.S. at 400 (internal quotation omitted). As noted above, the terms "residential telephone subscriber" and "telephone call" are not ambiguous. *See Duguid*, 592 U.S. at 407 (rejecting efforts to creatively read a term in the TCPA). That the TCPA affords the FCC some rulemaking authority does not mean the FCC can change the "plain and ordinary meaning" of statutory terms. *See Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 313 (11th Cir. 2025). Nor can the FCC impose requirements that the TCPA does not impose or authorize the FCC to impose. *See Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1083 (D.C. Cir. 2017). The FCC has no more authority to interpret "residential telephone subscriber" to include cell phones, or text messages and telephone calls, than it can interpret the term to include computers (despite modern similarities between phone and email use). This Court must interpret "residential telephone subscriber" and "telephone call" as those terms were written in 1991, to reach the best reading of the terms. *See, e.g.*, *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024).

There is thus no cause to defer to the FCC's interpretation that a residential phone number includes a cell phone. *See Loper Bright*, 603 U.S. at 412 (noting "legal interpretation" is the province of the judiciary). Unless Congress amends the TCPA to account for cellular devices with numbers registered to the DNC Registry, "it is not [the Court's] job to apply laws that have not yet been written." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984). Given this clear statutory directive from Congress, the Court should not defer to the FCC's interpretations of the TCPA.

Nor is there any basis to rely on cases that deferred solely to FCC guidance, including the

Ninth Circuit's decision in *Chennette v. Porch.com*, 50 F.4th 1217 (9th Cir. 2022). In *Chennette*, the Ninth Circuit did not undertake an independent examination of the statutory language, choosing instead to rely wholesale on the FCC's interpretation. *See id.* at 1224–26 ("Relying on the FCC's regulations and orders" to hold that a cell phone can qualify as "residential" if it is used for "both personal and business purposes" so long as the business purposes do not outweigh the personal purposes). The Court went so far as to state that it would do so again in the future should the FCC "interpret § 227(c) differently," further assuring that "[i]f the FCC does so, we will of course defer to its interpretation" pursuant to *Chevron*. *Id.* at 1225. This approach, which cedes interpretive authority to the agency rather than exercising the Court's own responsibility to interpret the statute, rests on a doctrinal regime that *Loper Bright* has since foreclosed. Therefore, because *Chennette* deferred entirely to the FCC's view of the TCPA, it provides no meaningful guidance for resolving the present dispute.

To be clear, some courts, including courts within this District, have held that cell phones may qualify as residential phones and text messages are entitled to the TCPA's protection. *See Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 WL 1784815, at *2 (D. Or. June 27, 2025); *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274, at *5 (D. Or. July 21, 2025). However, the "majority of the persuasive precedent" under the TCPA has found that the term "residential telephone" does not include cell phones. *Johnson*, 2022 WL 17546957, at *8. This Court should follow those decisions and decline to expand Section 227(c) beyond what Congress enacted.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant Cirkul, Inc. respectfully requests that this Court enter an order dismissing Plaintiff's Complaint in its entirety.

DATED: January 22, 2026

        TONKON TORP LLP

        By: */s/ Jeffrey G. Bradford*
            Jeffrey G. Bradford, OSB No. 133080
            jeff.bradford@tonkon.com
            Telephone: (503) 802-5724

        KELLEY DRYE & WARREN LLP
            Lauri A. Mazzuchetti, *Pro Hac Vice*
            lmazzuchetti@kelleydrye.com
            Damon W. Suden, *Pro Hac Vice*
            dsuden@kelleydrye.com
            Frances V. McDonald, *Pro Hac Vice*
            fmcdonald@kelleydrye.com

        *Attorneys for Defendant Cirkul, Inc.*

## L.R. 7-2 CERTIFICATION OF COMPLIANCE

This brief complies with the applicable word-count limitation under L.R. 7-2(b) because it contains 6,003 words, including headings, footnotes, and quotations, but excluding the caption, signature blocks, and any certificates of counsel.

DATED: January 22, 2026

        TONKON TORP LLP

        By: */s/ Jeffrey G. Bradford*
            Jeffrey G. Bradford, OSB No. 133080
            jeff.bradford@tonkon.com
            Telephone: (503) 802-5724

        KELLEY DRYE & WARREN LLP
            Lauri A. Mazzuchetti, *Pro Hac Vice*
            lmazzuchetti@kelleydrye.com
            Damon W. Suden, *Pro Hac Vice*
            dsuden@kelleydrye.com
            Frances V. McDonald, *Pro Hac Vice*
            fmcdonald@kelleydrye.com

        *Attorneys for Defendant Cirkul, Inc.*