Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : | CIVIL ACTION FILE NO.   6:25-cv-02036-AP |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CIRKUL, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____ / | | |

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 4

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ............................................................................................................. 5

I. The TCPA's Do Not Call List provisions protect cell phone subscribers. .................... 5

   A. The text of § 227(c) establishes that cell phone subscribers are
      "residential telephone subscribers" eligible for Do Not Call
      List protection ........................................................................................... 5

   B. Subsequent congressional action confirms that reading of
      § 227(c) ..................................................................................................... 7

   C. At the very least, Congress intended the FCC to decide this
      question ..................................................................................................... 8

   D. Defendant's cases do not warrant a different result ....................................... 9

II. The text of § 227(c) authorizes suits for unwanted text messages. ............................. 11

   A. Section 227(c) authorizes the FCC to prohibit unwanted telephone
      solicitations of all kinds, including text messages ......................................... 12

   B. Just as § 227(c)'s substantive provisions allow the FCC to regulate
      text messages, the private right of action in § 227(c)(5) authorizes
      suit when those rules are violated ............................................................... 13

   C. Earlier this month, the Ninth Circuit unequivocally stated that a
      "text message" constitutes a "call" within the meaning of the
      TCPA, and no interlocutory appeal is warranted .......................................... 19

III. Plaintiff's enforcement of the TCPA does not strip him of standing or convert his
only telephone number into a business phone. .................................................... 22

CONCLUSION ....................................................................................................... 26

## TABLE OF AUTHORITIES

*Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094 (D. Ariz. 2024) ....................................... 21

*Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090 (W.D. Pa.
July 31, 2018) ............................................................................................................... 23

*Bosley v. A Bradley Hosp. LLC*, No. 25 Civ. 22336, 2025 WL 2686984 (S.D. Fla. Sept. 19, 2025)
.................................................................................................................................... 14

*Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019) ........................................................ 21

*Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368 (2d Cir. 2022) ............................ 21

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .................................................. 14

*Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ............................... 5–7

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022) ................................... 1, 5, 8

*Connor v. Servicequick Inc.*, No. 24 Civ. 2286, 2025 WL 2855393 (D. Colo. Oct. 8, 2025) ...... 14

*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021) ................................ 21

*Cunningham v. Politi*, 2019 U.S. Dist. LEXIS 102545 ................................................. 10

*Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ................................................................................................................. 23

*Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025) .................................. 15–16

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) .................................... 12

*Dawson v. Porch.com, Inc.*, 2024 WL 4765159 (W.D. Wash. 2024) .................................. 14

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) .............................................. 21

*Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) ..................................................... 21

*Evers v. CampaignSidekick, LLC*, 2025 WL 2896818 (N.D. Ill. Oct. 10, 2025) ....................... 14

*Ferrell v. Colourpop Cosmetics, LLC*, 2025 U.S. Dist. LEXIS 140893 (C.D. Cal. 2025) .......... 9

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ..................................... 21

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ....................................... 4

*GTE Serv. Corp. v. FCC*, 224 F.3d 768 (D.C. Cir. 2000) ............................................ 8

*Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. Aug. 15, 2025) .............................. 2, 9

*Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118 (N.D. Tex. 2020) ............................... 10

*Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273 (9th Cir. Jan. 13, 2026)……………………………………………………………………………2, 19–21

*Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) .............................................. 12

*Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025) .................... 3, 6

*Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764 (C.D. Ill. 2025) ....................... 15–18

*Katz v. Liberty Power Corp., LLC*, No. 1:18-cv-10506, 2019 U.S. Dist. LEXIS 162793 (D. Mass. Sept. 24, 2019) ............................................................................................... 24

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) ........................... 13

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) .................................... 13

*Lirones v. UnitedHealthcare Ins. Co.*, 2024 WL 4198134 ........................................................ 9

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........................................................ 8, 18

*Lyman v. QuinStreet, Inc.*, 2024 WL 3406992 (N.D. Cal. 2024) ................................................ 7, 9

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ........................... 4

*Matthews v. Mid City Cannabis Club, Inc.*, 2021 WL 1567496 (C.D. Cal. Mar. 2, 2021) ........ 4

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) ................. 1, 3

*Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) ............................................. 21

*Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771 (N.D.W. Va. 2017) ......................................... 23

*Moore v. Triumph CSR Acquisition, LLC*, 2023 U.S. Dist. LEXIS 220876 .............................. 10

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) .................................................. 23

*New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019) .................................................................... 5, 16

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) .............................................. 13

*Outley v. City of New York*, 837 F.2d 587 (2d Cir. 1988) .......................................................... 23

*Pfizer, Inc. v. Gov't of India*, 434 U.S. 308 (1978) ...................................................................... 6

*Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025) .................................. 9

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) ............................................... 13

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .............................. 12–15, 19

*Seven County Infrastructure Coal. v. Eagle County*, 145 S. Ct. 1497 (2025) ........................... 10

*Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019) .......................... 10

*Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025) ............................................................................................................................................. 10

*Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) ............................... 3, 22

*Trim v. Mayvenn, Inc.*, No. 20-CV-03917, 2022 WL 1016663 (N.D. Cal. Apr. 5, 2022) ........... 26

*United States v. Paulson*, 68 F.4th 528 (9th Cir. 2023) ............................................................. 16

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) .................................. 19

*Warciak v. Subway Rests., Inc.*, 949 F.3d 354 (7th Cir. 2020) .................................................. 21

*Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. 2025) ............... 15, 20

*Wilson v. Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. 2025) ...................................... 2, 13, 19

## INTRODUCTION

A statute enacted in 1991 that prohibits "vehicles" in a park applies equally to sedans and Cybertrucks, even though Cybertrucks did not exist at the time. So too here. The Telephone Consumer Protection Act ("TCPA") authorizes the Federal Communications Commission ("FCC") to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," 47 U.S.C. § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list, § 227(c)(3)(F). For decades, the FCC has made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. § 64.1200(c)(2), (e); 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003); *Chennette v. Porch.com*, 50 F.4th 1217, 1223 (9th Cir. 2022). The FCC has also determined that it may prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14115; 38 FCC Rcd. 12247, 12256–57 (2023).

Cirkul has now filed a motion to dismiss. It makes a big ask. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So Cirkul sees a chance to swing for the fences: It asks this Court to reject the FCC's longstanding interpretation and hold that the Do Not Call List protects only voice calls to old-school landline phones, potentially upending Do Not Call List protection for millions of Americans.

Luckily for consumers nationwide, Cirkul's arguments have been nearly uniformly rejected and this Court should decline that request, as the Ninth Circuit Court of Appeals did earlier this month with respect to text messages in *Howard v. Republican Nat'l Comm.*, No. 23-

Opposition to Motion to Dismiss                    1

3826, 2026 WL 90273, at *3–4 (9th Cir. Jan. 13, 2026) ("a 'text message' constitutes a 'call' within the meaning of the TCPA"). With respect to cellular telephones never being considered a "residential" line, "[i]t appears that since *McLaughlin Chiropractic*, every court examining this particular issue concerning 'residential' phones has held that [47 U.S.C. § 227(c)]'s provisions apply to cell phones." *Harriel v. Bealls, Inc.*, No. 8:25-CV-1165-TPB-SPF, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025) (citing *Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359, at *2-3 (N.D. Ga. Aug. 7, 2025).

Oregon federal courts are aligned on both of these important consumer protection issues, both in cases brought by Mr. Wilson, even though Cirkul is quick to criticize Mr. Wilson's consumer advocacy. First, Judge Aiken held in *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025)) that "without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision." Next, in *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, *13 (D. Or. July 21, 2025), Judge McShane held, "It cannot be argued in good faith that text messages are so categorially different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.".

Defendant's "standing" argument is a rhetorical rebranding of a merits defense and a credibility attack. Plaintiff alleges a textbook TCPA injury—repeated unsolicited marketing solicitations to a number registered on the National Do Not Call Registry—and that invasion of privacy and nuisance is a concrete injury under controlling law. (ECF No. 1 ¶¶ 18–21, 24, 27.) Unable to dispute the statutory elements on the pleadings, Defendant instead cites *Stoops* and

argues that Plaintiff's enforcement history somehow strips him of Article III standing or converts his residential number into a "business" line. Courts overwhelmingly reject that theory because it would create an amorphous line of participation for federal litigation—one that finds no support in Article III or the TCPA.

For all of these reasons, and those set forth more fully below, the Court should deny Defendant's Motion to Dismiss in its entirety.

## **<u>BACKGROUND</u>**

Plaintiff Chet Michael Wilson brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, arising from Defendant Cirkul Inc.'s delivery of repeated marketing text messages to his cellular telephone number despite its registration on the National Do Not Call Registry ("DNC Registry"). (ECF No. 1 ¶¶ 1, 19–20.)

Plaintiff is a natural person residing in Oregon and has been, at all relevant times, the subscriber to and customary user of cellular telephone number (541) XXX-9999. (Id. ¶¶ 8–10.) For at least five years, Plaintiff has used this number exclusively as his personal residential telephone number for personal and household purposes, in lieu of a landline telephone. (Id. ¶¶ 11–15.) Plaintiff does not use this number for business or commercial purposes and is not reimbursed by any business for his cellular phone plan. (Id. ¶¶ 12–14.)

Plaintiff registered his telephone number on the National Do Not Call Registry at least thirty days before receiving the text messages at issue. (Id. ¶ 18.) Despite this registration, Defendant delivered, or caused to be delivered, at least six marketing text messages to Plaintiff's number during September and October 2025. (Id. ¶¶ 19–21.) The messages promoted Defendant's products and services, including product bundles, rewards programs, and subscription offerings. (Id. ¶ 21.)

The text messages were intended to advertise and market Defendant's business and services. (Id. ¶ 24.) Plaintiff did not provide Defendant with prior express consent or permission to send these marketing messages, nor did Plaintiff request information or promotional materials from Defendant. (Id. ¶¶ 25–26.) Although the messages were intended for someone other than Plaintiff, they were nevertheless delivered to Plaintiff's registered number. (Id. ¶ 23.)

As a result of Defendant's conduct, Plaintiff suffered an invasion of privacy, intrusion into his life, and private nuisance—the precise harms the TCPA's do-not-call provisions were enacted to prevent. (Id. ¶ 27.) Plaintiff brings this action individually and on behalf of a nationwide class of similarly situated individuals whose residential or cellular telephone numbers were registered on the DNC Registry and who nevertheless received multiple marketing calls or text messages from Defendant. (Id. ¶¶ 29–56.)

## LEGAL STANDARD

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021. Indeed as the Ninth Circuit noted, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In assessing a Rule 12(b)(6) motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## ARGUMENT

I. **The TCPA's Do Not Call List provisions protect cell phone subscribers.**

   a. ***The text of § 227(c) establishes that cell phone subscribers are "residential***

*telephone subscribers" eligible for Do Not Call List protection.*

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As the FCC and courts have long recognized, the ordinary meaning of the Do Not Call List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, *Chennette v. Porch.com*, 50 F.4th 1217, 1223–25 (9th Cir. 2022); 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (collecting cases).

Start with what the statute prohibits: unwanted "telephone solicitations." 47 U.S.C. § 227(c)(3). "Telephone solicitation" is a defined term. § 227(a)(4). In essence, it means "a telephone call or message" "which is transmitted to any person" for commercial purposes. *Id.*[1] Solicitations to cell phones fit that definition, which reflects no focus on any particular phone technology. First, to state the obvious, a cell phone is a "telephone." *See, e.g.*, 47 U.S.C. § 227(b)(1)(A)(iii) (using the phrase "cellular telephone"). The word "transmitted" also conveys no preference: "Transmit" means "to send a signal *by radio*

---

[1] Here is the full definition: "The term 'telephone solicitation' means the initiation of *a telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, *which is transmitted to any person*, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4) (emphases added).

*waves or by wire*." *Transmit*, Webster's College Dictionary (9th ed. 1991) (emphasis added). Nor does the word "message," which means "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*, from one person to another." *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added). Finally, "any person" has a "naturally broad and inclusive meaning." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978).

Next, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. § 227(c)(1), (3). That phrase, too, conveys no technological limitation. For starters, a person can be a "telephone subscriber" to any telephone service, either wired or wireless; a "subscriber" is anyone who pays for a service. *Cacho*, 739 F. Supp. 3d at 206–07; *Wilson v. Hard Eight Nutrition LLC*, 2025 WL 1784815, at *5 (D. Or. 2025).

That leaves the word "residential," which Cirkul's argument hinges on. That word doesn't exclude cell phone subscribers either. As used in the TCPA "residential" is just the opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359, at *3 (N.D. Ga. 2025). It refers to the purposes for which a phone is used, not its physical characteristics or location. *See Hard Eight*, 2025 WL 1784815, at *5–6. So "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206. Many cell phone subscribers, including Mr. Wilson, fit that description.

That meaning of "residential" also aligns with the "express aim" of the Do Not Call List: to protect residential subscribers' "'privacy rights.'" *Hard Eight*, 2025 WL 1784815, at *6 (*quoting* 47 U.S.C. § 227(c)(1), (2)). That shows that "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through

which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those personal privacy interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman v. QuinStreet, Inc.*, 2024 WL 3406992, at *4 (N.D. Cal. 2024).

### b. *Subsequent congressional action confirms that reading of § 227(c).*

Between 1991 and 2003, Congress legislated several times to clarify the status of cell phones, making clearer and clearer that it wanted them to be protected by § 227(c).

In 1996, Congress updated the definition of "telephone exchange service." *See* Telecommunications Act of 1996, Pub. L. No. 104-104, § 3(a)(1)(B), 110 Stat. 56, 58 (1996). "Telephone exchange service" is also a defined term in the Telecommunications Act. *See* 47 U.S.C. § 153(54). And as with "common carrier," the TCPA uses "telephone exchange service" to describe companies whose "subscribers" are eligible for Do Not Call List protection. *See* 47 U.S.C. § 227(c)(3)(B), (C). The 1996 legislation clarified that this term, too, refers to both landline and cell phone service. *See* 11 FCC Rcd. 15499, 16000 ¶ 1014 (1996); *GTE Serv. Corp. v. FCC*, 224 F.3d 768, 769, 774–75 (D.C. Cir. 2000).

In March 2003, Congress passed the Do Not Call Implementation Act, which sent a clear signal that Congress understood § 227(c) to protect cell phone subscribers. *See* Pub. L. No. 108-10, 117 Stat. 557 (2003). At the time, the FCC had started, but not yet finished, its rulemaking to establish a national Do Not Call List. *See* 17 FCC Rcd. 17459 (2002). Meanwhile, the Federal Trade Commission had recently finalized its own do-not-call regulations. *See* 68 Fed. Reg. 4580, 4671–72 (Jan. 29, 2003). Eager to get a national Do Not Call List up and running, Congress directed the FCC to complete its rulemaking, and, in "issuing such rule," to "maximize consistency with" a specific FTC regulation: "16 C.F.R. § 310.4(b)." Pub. L. No. 108-10, § 3,

117 Stat. 557, 557 (2003). That regulation granted do-not-call protection to any "telephone number," including cell phone numbers. *See* 16 C.F.R. § 310.4(b)(1)(iii)(B); 68 Fed. Reg. at 4672.

### c. *At the very least, Congress intended the FCC to decide this question.*

When it first established the Do Not Call List regulations, the FCC determined that "wireless subscribers" were eligible for protection. 18 FCC Rcd. 14014, 14037 ¶ 33 (2003). Recognizing that "residential" refers to a phone's use, not its physical characteristics or location, the FCC rejected an argument similar to Cirkul's finding that "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." *Id.* at 14038–39 ¶¶ 34–35; *Chennette*, 50 F.4th at 1227–28 (Bress, J., concurring). That position is consistent with other FCC decisions before and since. *See* 47 C.F.R. § 20.15(a); 59 Fed. Reg. 18493, 18494–95 (Apr. 19, 1994); 20 FCC Rcd. 3788, 3793 (2005); 38 FCC Rcd. 12247, 12256–57 (2023).

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id.* at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within them. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

The FCC's decisionmaking here was, at the very least, "reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 145 S. Ct. 1497, 1511 (2025). Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*. *See e.g Harriel v. Bealls, Inc.,* 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Hard Eight,* 2025 WL 1784815, at *6–7; Lirones,* 2024 WL 4198134, at *7; Ferrell v. Colourpop Cosms., LLC,* 2025 U.S. Dist. LEXIS 140893, at *17–20 (C.D. Cal. 2025); *Lyman,* 2024 WL 3406992, at *4.

### d.  *The Defendant's cases do not warrant a different result.*

The cases Defendant cites do not support a different conclusion and are unpersuasive outliers. In *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the court *sua sponte* expressed its own divination whether cellular telephone numbers were covered by the TCPA's DNC provisions but nevertheless awarded the plaintiff $33,000 in statutory damages. Indeed, subsequent decisions from the Eastern District of Pennsylvania have made clear that the TCPA's Do Not Call protections apply to cell phones.[2]

In *Cunningham v. Politi*, 2019 U.S. Dist. LEXIS 102545, a serial *pro se* plaintiff failed to plead that his cellphone functioned as a residential line. *See Myrick v. Adapthealth, LLC,* No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *3 (E.D. Tex. June 26, 2023) ("Plaintiffs allegations regarding his cellular phone qualifying him as a residential telephone subscriber distinguish this case from the line of Cunningham cases cited by Defendants."). Additionally, *Politi* has been criticized by other courts and labeled "contrary to common sense." *See, e.g., Hirsch v. USHealth Advisors, LLC,* 337 F.R.D. 118, 131 (N.D. Tex. 2020).

---

[2] *See e.g. Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025) (holding the same Plaintiff had stated a claim for calls to his residential cell phone on the Do Not Call Registry).

Defendant's reliance on *Moore v. Triumph CSR Acquisition, LLC*, 2023 U.S. Dist. LEXIS 220876, is also misplaced. The *Moore* decision did not involve Section 227(c) or its implementing regulation, 47 C.F.R. § 64.1200(c). The court stated, "[c]ourts widely hold that a cell phone is not a 'residential telephone line' within the meaning of subsection 227(b)(1)(B)" and "any calls to a cell phone cannot violate subsection 227(b)(1)(B)." *Moore,* 2023 U.S. Dist. LEXIS 220876, at *5. However, the Court's interpretation has no bearing on the question here—whether "residential telephone subscribers" in Section 227(c) can encompass cellphone users who use their cellphones for residential purposes.

Simply put, Defendant's minority of cases are either distinguishable, or simply ill-reasoned and underdeveloped. Accordingly, the text, structure, and history of § 227(c) all confirm that "residential telephone subscribers" plainly encompasses cell-phone subscribers like Plaintiff. Congress designed this provision to safeguard residential phone users from unwanted intrusions, regardless of whether their residential line happens to be wireless or wired. Defendant's cramped reading would gut those protections for the vast majority of modern households and cannot be reconciled with the statute's ordinary meaning, the FCC's consistent interpretation, or the weight of authority.

Judge Aiken's decision is consistent with the reasoning of every District Court following *McLaughlin* to analyze this question:

> Section 227(c) does not refer to any kind of transmission technology; it does not refer to "residential telephone *line*" or "landline" or "line." And Congress knew how to denote line-transmission technology because it did so in Section 227(b). "Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone *line*,' as Congress used that term in the preceding subsection."
>
> Second, Defendant's interpretation conflicts with the plain language of the statute. "[A] fundamental canon of construction provides that "unless otherwise defined,

words will be interpreted as taking their ordinary, contemporary, common meaning." Defendant argues that the phrase "residential telephone subscribers" means residential landlines, but Defendant's interpretation does not conform with the ordinary, contemporary, and common meaning of "residential telephone subscribers." In 1991, when the TCPA was enacted, a subscriber was defined as one who "agree[s] to receive a periodical or service regularly[]…

The do-not-call provision's sole and express aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Courts have long recognized the importance of residential privacy interests.

Defendant's interpretation would protect the privacy interest of a home landline subscriber but not a home cellular subscriber—even when a cell phone is the sole phone for home use, as is increasingly the case. Defendant effectively ties residential privacy interests to an obsolete and disappearing transmission technology. But "[t]hose privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. Quinstreet, Inc.*, No. 23-CV-05056-PCP, 2024 U.S. Dist. LEXIS 123132, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). There is no evidence that a call or message transmitted by a cell tower is less intrusive than a call or message delivered by a land line. Defendant's attempt to define away the privacy interests [*17] that Congress specifically sought to protect yields an absurd result.

*Wilson v. Hard Eight Nutrition LLC*, *11-12, *14, *16-17. This Court should hold the same.

## II.    The text of § 227(c) authorizes suits for unwanted text messages.

The TCPA authorizes recipients of unwanted "telephone solicitations" to sue for violations of the FCC's Do Not Call List rules. 47 U.S.C. § 227(c)(5). In relevant part, that private right of action says anyone may sue who "has received more than one telephone call within any 12-month period … in violation of the regulations." *Id.*

The Do Not Call List provisions authorize the FCC to regulate "telephone solicitations," a defined term that plainly includes text messages. *See* 47 U.S.C. § 227(a)(4), (c)(1), (c)(3)(F). And the private right of action has the same scope as those other provisions.

>    a. *Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.*

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added).

That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a 'call' within the meaning of the TCPA."). That interpretation follows from "the ordinary, contemporary, and common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed "[a]ny notice, word, or communication, no matter the mode and no matter how sent." *Message*, *Black's Law Dictionary* (6th ed. 1990).[3] So a "message" can be spoken *or* written. More generally, the definition of "telephone solicitation" focuses not on a communication's form but whether it has a commercial purpose. *See, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025). So, Congress presumably referred to "call or message" disjunctively in order to capture the broadest possible range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). And "a voice message or a text message are not distinguishable in terms of being an invasion of

---

[3] *See also, e.g.*, *Message*, Webster's New Collegiate Dictionary (9th ed. 1991) ("a communication in writing, in speech, by signals"); *Message*, Oxford English Dictionary (2d ed. 1989) ("an oral or written communication sent from one person to another").

privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025).

Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But, as just explained, the statute *does* explicitly cover any "telephone solicitation," which is broadly defined to include any "call or message." 47 U.S.C. § 227(a)(4). That broad and inclusive definition governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024).

> **b.  *Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.***

Section 227(c)(5) grants a private right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019). Accordingly, the FCC has recognized since 2003 that when the TCPA says "call," it means not just traditional voice calls but also modern text messages. 18 FCC Rcd. 14115 ¶ 165. And many courts have reached the same conclusion. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular

telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).");
*Satterfield*, 569 F.3d at 954 (holding "that a text message is a 'call' within the TCPA"); *Dawson
v. Porch.com*, 2024 WL 4765159, at *4 (W.D. Wash. 2024) (collecting cases).

That meaning of "call" is especially clear in nearby provisions. Notably, there is only one
other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In
§ 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory
authority "to further restrict telephone solicitations, including those *calls* exempted under
subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the
statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991,
Pub. L. No. 102-243, § 3(a), 105 Stat. 2394, 2395 (1991). So § 227(c)(1)(D)'s reference to "calls
exempted under" the definition of "telephone solicitation" presumably mirrored that definition—
which, as explained above, broadly encompasses a "telephone call or message" and thus covers
text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4).

The Court in *Wilson v. Better Mortg. Corp.,* 2025 U.S. Dist. LEXIS 251694 (S.D. NY.)
held:

> District court decisions have largely held that § 227(c) applies to text
> messages. *See, e.g., Mujahid*, 2025 WL 3140725, at *3; *MEDVIDI*, 2025 WL
> 2856295, at *2–4; *Skopos Fin.*, 2025 WL 2029274, at *4–5; *Hudson*, 2024 WL
> 4190513, at *8; *Pariseau*, 619 F. Supp. 3d at 1207; *Sagar v. Kelly Auto. Grp., Inc.*,
> No. 21 Civ. 10540, 2021 WL 5567408, at *4–5 (D. Mass. Nov. 29, 2021); *see
> also Bosley v. A Bradley Hosp. LLC*, No. 25 Civ. 22336, 2025 WL 2686984, at *5
> (S.D. Fla. Sept. 19, 2025) (no dispute that § 227(c) applies to text messages); *Evers
> v. CampaignSidekick, LLC*, 2025 WL 2896818, at *4 (N.D. Ill. Oct. 10, 2025)
> (same); *Connor v. Servicequick Inc.*, No. 24 Civ. 2286, 2025 WL 2855393, at *2
> (D. Colo. Oct. 8, 2025) (same). These decisions turned on statutory construction,
> not agency deference, and thus are not called into question by *Loper Bright*.

Cirkul relies on *Jones v. Blackstone Medical Services, LLC*, 2025 WL 2042764 (C.D. Ill. 2025) and *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025), both courts found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis*, 2025 WL 2491195, at *1.

But *Jones* and *Davis* are unpersuasive. There, the court decided that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at *4. But that is not the right way to interpret a statute. As the Supreme Court has cautioned—"modern intuition" doesn't always match "evidence of [a] term's meaning at the time of [a statute]'s adoption." *New Prime Inc.*, 586 U.S. at 114. When there's a mismatch, the original meaning of the text is what controls, not present-day usage. *See id.* at 114–16. So using the word "call" when one means "text" of course does sound odd to 2025 ears; unlike, say, the word "emoji," that meaning of the word "call" hasn't come to be part of the modern text messaging lexicon. But *Jones* and other cases go astray when they reflexively apply those present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[4]

Similarly, as explained above, it's irrelevant that Congress couldn't have text messages specifically in mind in 1991. "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Skopos Fin.*, 2025 WL 2029274, at *4. *Jones* also disregarded the FCC's longstanding interpretation of "call" because the FCC, until 2023, had only articulated that interpretation in the context of the

---

[4] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of communication in 1991).

statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do

Not Call List provisions are built around the broadly defined term "telephone solicitation." 47

U.S.C. § 227(c)(1), (3). The standalone word "call" is more central to § 227(b)'s autodialer and

robocall prohibitions, or in associated definitional provisions.[5] That's why the FCC first

determined that "call" includes text messages in the § 227(b) context, and only more recently

memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List

context. *See* 47 C.F.R. § 64.1200(e); 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 7, 2023); 38 FCC Rcd.

12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and

§ 227(c) on this question. And neither *Jones* nor Cirkul identifies any reason why there would

be. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think

otherwise, "a word or phrase is presumed to bear the same meaning throughout a text").

   The courts' analysis in *Jones* and *Davis* systematically excludes the experiences and

needs of deaf and hard-of-hearing individuals, who have used text-based communication for

telephone calls since long before the TCPA was enacted in 1991. For millions of Americans who

rely on TTY/TDD (teletypewriter/telecommunications device for the deaf) technology or who

are deaf or have other hearing disabilities, text messages are not just "telephone calls," they are

often the *only* way these individuals can make and receive "telephone calls."

   But even putting aside this reasoning, it is incorrect to assert that the original public

meaning of "telephone calls" extended only to voice-based communications when the statute was

enacted in 1991. It did not. *Jones'* and *Davis'* premise, that text messaging via telephones did not

exist in 1991, is false when one considers the universe of text-based telephone communications

---

[5] *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3(a), 105 Stat. 2394, 2395–400 (using "call" or "calls" in the original text of 47 U.S.C. § 227(a)(1), (a)(3), (b)(1)(A), (b)(1)(B), (b)(2)(A), (b)(2)(B), (c)(1)(D), (c)(5), (d)(1)(A), (d)(3)).

that existed in 1991, and, indeed, had existed for decades before. Both *Jones* and *Davis*, as well as the other two decisions cited by the Defendant, state that interpreting "telephone calls" to include text messages would amount to updating the statute to reflect technological changes. But it is just as clear that *Jones* and *Davis* abdicated their interpretative responsibility, not just in terms of a demonstrably wrong textual analysis, but also in ignoring the statutory framework and purposes of the TCPA. The TCPA's purpose was and is to protect consumers from unwanted telephone solicitations that invade their privacy and disrupt their daily lives. Unwanted text messages, particularly to individuals who are deaf and hard-of-hearing, are every bit as intrusive as unwanted voice calls, and perhaps more so, given the additional challenges implicit in living a life with hearing loss. To exclude text messages from the TCPA's protections based on a hyper-literal and historically ignorant reading of "telephone call" would thus defeat the TCPA's purpose. When Congress enacted the TCPA in 1991, it did so with full knowledge that deaf individuals used text-based telephone communication via TTY/TDD devices, having *required* telephone companies to provide such devices and services a year prior. Congress chose to use the term "telephone call" rather than "voice call" or "spoken communication." This choice should be understood as inclusive of all forms of communication sent and received by telephones, including text-based telephone "calls."

Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day. As previously explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and

aligns with both its determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 FCC Rcd. 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm its "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

Judge McShane for this analysis correct when he held:

> The FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support. On the contrary, as technology has developed over the years, so too has our understanding of the TCPA's protections. *See 2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14017 ("significant changes in the technologies and [*13] methods used to contact consumers . . . warrant modifications to our existing rules, and adoption of new rules if consumers are to continue to receive the protections that Congress intended to provide when it enacted the TCPA"). It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.

*Wilson v. Skopos Fin., LLC*, *12-13. This Court should do the same.

**c.** ***Earlier this Month, the Ninth Circuit Unequivocally Stated that a "text message" Constitutes a "call" within the meaning of the TCPA. Relatedly, there is no need for an Interlocutory Appeal.***

Since *Satterfield*, no Court in the Ninth Circuit has dismissed a TCPA case holding that a text message is not a call. The argument is foreclosed. Indeed, earlier this month in *Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273, at *3–4 (9th Cir. Jan. 13, 2026), the Ninth Circuit affirmed *Satterfield* in another TCPA case:

> The key question, then, is whether the sending of this text message involved (1) "mak[ing] a[ ] call" or "initiat[ing] a[ ] telephone call" to that phone number, (2) "using an artificial or prerecorded voice." *Id.*
>
> We have previously held that, under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), it was "reasonable" to defer to the FCC's conclusion that the term "call" in § 227 includes a "text message." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, we think it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) ("*Chevron* is overruled."). *Satterfield* emphasized two key points about statutory construction that supported the FCC's understanding of a "call," *see Satterfield*, 569 F.3d at 953–54, and even under de novo review, those same two points support the conclusion that a "text message" constitutes a "call" within the meaning of the TCPA… the RNC's text message was a 'call.'

*Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273, at *3–4 (9th Cir. Jan. 13, 2026). There's not much Cirkul can say to that analysis, so it instead claims that the Ninth Circuit's decision in *Howard*, however, was also limited to claims asserted under Section 227(b), rather than claims under Section 227(c). However, this was also addressed in *Wilson v. Better Mortg. Corp.,* 2025 U.S. Dist. LEXIS 251694, *14-15, 17, 19:

> The Court holds, in accord with a growing consensus of case law, that § 227(c) of the TCPA applies to text messages for multiple reasons, developed below. In brief, although modern parlance tends to distinguish between phone calls and text messages, the meaning of "telephone call" in 1991—when the TCPA was enacted—was broad enough to encompass text messages. The overwhelming

weight of authority holds that § 227(b), a neighboring section using the same term, covers text messages, and the meaning of "telephone call" in § 227(c) is at least as broad as that in § 227(b). The FCC has also interpreted both § 227(b) and (c) to apply to text messages…

Section 227(b) of the TCPA uses the same term as § 227(c): "telephone call." And numerous federal courts of appeals have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages. *See, e.g.*, *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("Although the text of the statute refers only to 'calls,' we have held that, under the TCPA, that term encompasses text messages." (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013))); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]."); *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."); *see also Satterfield*, 569 F.3d at 954 (deferring to FCC's reasonable interpretation of the TCPA "to hold that a text message is a 'call'")**6** ; *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) (holding, under § 227(b), that receipt of one unwanted text message caused concrete injury sufficient for Article III standing)…

The weight of the above authority concerning § 227(b) strongly suggests that § 227(c)'s parallel usage of "telephone call[s]" applies to text messages. "[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning." *Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 372-73 (2d Cir. 2022) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005)); *see also Pulsifer v. United States*, 601 U.S. 124, 149, 144 S. Ct. 718, 218 L. Ed. 2d 77 (2024) ("In a given statute, the same term usually has the same meaning."). Here, nothing indicates that Congress intended for the same term in § 227(c) to cover fewer modes of telephonic communications than that in § 227(b)…

The statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting subscribers from telephone solicitations, not on any one form of such solicitations. *See, e.g.*, *MEDVIDI*, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3; *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024). Given the weight of authority that § 227(b) covers text messages despite its narrower scope as to modes of technology than § 227(c), it logically

follows that § 227(c) also covers text messages. Limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure. It would also be at odds with the Second Circuit's recognition that "the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA." *Melito*, 923 F.3d at 88.

In short, *Howard* confirms what Satterfield already made clear: a "call" under the TCPA includes a text message even under de novo review after *Loper Bright*. And because § 227(c) uses the same statutory term—"telephone call"—there is no textual basis to assign it a narrower meaning in the Do-Not-Call context than in the neighboring provisions of § 227(b). See also 47 C.F.R. § 64.1200(e) (confirming the FCC's rule applies to calls and text messages). Accordingly, whatever rhetorical distinction Defendant attempts to draw between § 227(b) and § 227(c), it cannot overcome controlling Ninth Circuit authority on the meaning of "call," and dismissal on that ground should be denied.

Cirkul suggests that this case presents a novel and unsettled question of statutory interpretation warranting interlocutory review. It does not. Interlocutory appeals are "a rare exception" to the final-judgment rule and are appropriate only where an order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) where an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Indeed, there is no "substantial ground for difference of opinion." The Ninth Circuit has long held that text messages constitute "calls" under the TCPA, and earlier this month reaffirmed that conclusion in *Howard v. Republican National Committee*, holding that a text message is a "call" even under de novo review and without reliance on *Chevron* deference, as discussed above. 2026 WL 90273, at *3–4. Likewise, courts examining § 227(c) after *McLaughlin* have overwhelmingly concluded that residential-use cellular numbers fall within the

statute's protection. Within this District in particular, courts have squarely rejected Defendant's arguments and applied § 227(c) to text messages sent to residential-use cell phones. Where binding circuit authority and consistent district-court decisions point in the same direction, there is no substantial disagreement warranting certification. Defendant points *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093 (C.D. Cal.), in which the district court elected to certify an interlocutory appeal on whether § 227(c) applies to text messages. Critically, *Dilanyan* was certified *before* the Ninth Circuit issued its decision in *Howard*. Whatever uncertainty the *Dilanyan* court perceived has now been substantially clarified by binding appellate authority confirming that a "text message" constitutes a "call" under the TCPA even under de novo review. In light of *Howard*, the rationale for interlocutory certification has materially weakened, not strengthened.

### III.  Plaintiff's Enforcement of the TCPA Does Not Strip Him of Standing or Convert his only Telephone Number into a Business Phone.

Defendant's final attempt to avoid liability is to argue that Plaintiff lacks standing because he purportedly uses his telephone number as a "business tool," citing *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). That argument misunderstands both Article III standing and the TCPA, and it has been repeatedly rejected by courts—particularly in this Circuit.

Defendant's suggestion that Plaintiff's history of filing other TCPA actions prohibits him from being a class representative fails as a matter of law. The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants careful scrutiny.  *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). "[N]othing in the Constitution, though, requires a plaintiff to be a naïf.  Litigation is not college athletics: there is no 'amateurs only'

rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *Murray v. GMAC Mortg. Corp*., 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders.") (Easterbook, J.); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) (same).

Merely because Mr. Wilson is able to identify those who placed calls to him illegally does not deprive him of harm or standing any more "than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying motion for summary judgment in TCPA case related to a similar standing argument). While the Defendant is "understandably frustrated" by the fact they are being sued, he is doing "exactly what Congress intended—enforcing the law." *Id.* Thus, courts reject such irrelevant and dangerous attacks on plaintiffs who bring multiple actions and engage in investigative tactics to stop telemarketing companies:

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as Stoops endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (citation omitted) (noting that most people would accept $500 or more in exchange for enduring the privacy violation of a single robocall). Like the

defendants in *Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.* While the argument advanced by the Defendant will fail as a matter of fact at summary judgment, it certainly fails as a matter of law. Indeed, Cirkul does not cite a single case that dismissed a TCPA claim on this theory at the Rule 12 stage and the Plaintiff is unaware of one.

And the fact that Plaintiff has chosen to exercise his rights under a federal statute designed to both protect him--and at the same time provide Defendant a simple and straightforward means for avoiding liability in precisely these circumstances (which Defendant intentionally failed to avail itself of by verifying it had the right individual before sending marketing messages)—does not convert Plaintiff's residential number into a business one. No court has ever found as much, nor will it. *Compare Katz v. Liberty Power Corp., LLC*, No. 1:18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 162793, at *30 (D. Mass. Sep. 24, 2019) (explaining that a consumer is within the TCPA's zone of interest unless he maintained the number called by the defendant *solely* for "attracting … calls to support his TCPA lawsuits") *with Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 788-89 (W.D. Pa. 2016), in which, at summary judgment, a TCPA plaintiff was found to lack standing where she testified her sole purpose for owning over 35 cell phones was to run what she referred to as a TCPA litigation business, and that these 35 cell phones were used only to collect telemarketing calls and were not called by anyone else for any other purpose.

Courts in the Ninth Circuit are in accord, as a Northern District of California Court held that the plaintiff's status as a "professional TCPA plaintiff" did not strip her of standing because there was "no evidence that [the plaintiff] 'seeks to receive' or 'attract' telemarketing calls, or that any of her other TCPA actions are frivolous." *Trim v. Mayvenn, Inc.*, No. 20-CV-03917-MMC,

2022 U.S. Dist. LEXIS 63222, 2022 WL 1016663, at *3 (N.D. Cal. Apr. 5, 2022). As a result, the fact that Mr. Wilson has received a number of TCPA violative calls and texts from various companies that failed to take the steps that are readily available to them to avoid contacting people who have not agreed to be contacted in these situations and filed suits against them, as he has done here, does not alter the only reasonable conclusion to be drawn from Plaintiff's allegations—that he is a residential subscriber of his cellular telephone number.

At the pleading stage, Plaintiff's allegations that his number is his sole line, used exclusively for personal and household purposes, are more than sufficient to state a claim. Whether a number is used residentially is a factual question for discovery, not a basis for dismissal at the outset.

## CONCLUSION

For purposes of Rule 12(b)(6), Plaintiff has alleged exactly what the TCPA requires: a residential subscriber registered on the National Do Not Call Registry who nevertheless received repeated marketing text solicitations. Defendant's motion asks this Court to carve modern consumers out of a consumer-protection statute by tying "residential" privacy interests to obsolete technology and by pretending that "text messages" are not "calls," even though binding Ninth Circuit authority forecloses that argument. And Defendant's personal attack on Plaintiff's enforcement history is no substitute for a legal defense; a consumer does not lose constitutional standing by knowing his rights and invoking the remedies Congress expressly provided.

Because the Complaint plausibly alleges violations of 47 U.S.C. § 227(c) and the FCC's implementing regulations, and because Defendant's remaining arguments are either foreclosed by controlling authority or depend on factual disputes inappropriate for resolution at the pleading stage, the Court should deny Defendant's Motion to Dismiss in its entirety.

Dated: January 24, 2026

PLAINTIFF, on behalf of himself
and others similarly situated,


_/s/ Anthony I. Paronich_
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com