Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : : : : | CIVIL ACTION FILE NO. 6:25-cv-2036 |
| Plaintiff, | : : | |
| v. | : : : | |
| CIRKUL, INC. | : : : | |
| Defendant. | : : | |

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF HIS RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff submits this Notice of Supplemental Authority to advise the Court of a recent decision relevant to the Court's consideration of Defendant's dispositive motion.

Earlier this week, the Southern District of Texas issued *Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 1415 (S.D. TX. January 26, 2026). A copy of the decision is attached hereto as Exhibit 1.

*Alvarez* addresses the same threshold question presented in Defendant's motion and in the parties' post-McLaughlin submissions: whether "telephone calls" under 47 U.S.C. § 227(c) encompass promotional text messages sent to numbers listed on the National Do-Not-Call Registry where the Court held:

1

The true problem in this case "comes from the fact that technology has done more to change [telephone]s than [Congress] has done to change § [227(c)(5)]." *In re Erickson*, 815 F.2d 1090, 1092 (7th Cir. 1987) (Easterbrook, J.). Section 227(c) does not define the term "telephone call," nor does any other part of the statute. Where a statute leaves terms undefined, courts must "accord those terms their 'ordinary, contemporary, common meaning.'" *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024) (quoting *Rest. L. Ctr. v. United States Dep't of Lab.*, 115 F.4th 396, 403-04 (5th Cir. 2024)). In today's regular parlance, of course, no ordinary person would use the word "telephone call" to refer to a text message. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) ("No ordinary user of the English language would write the sentence 'John called Sue' intending to mean "John sent a text message to Sue'.") But this Court is cognizant that a usage which seems [*9] obvious *now* is not always a reflection of the *original* meaning of the statute. The use of the verb "to text"—now ubiquitous—had no such meaning in 1991. However, that does not mean it could not have been encompassed by the meaning of "telephone call." Indeed, the term "text message" only seems distinct from the idea of a "telephone call" today because the former term developed in our language specifically to distinguish a text communication from a voice communication…

The question, then, is whether the concept of a "text message" is fairly embraced by the meaning of "telephone call" in 1991. Looking to a dictionary contemporaneous with the TCPA's passage, the relevant definition of "call" was "to get or try to get into communication by telephone." Webster'S Ninth New Collegiate Dictionary 197 (1990). This language is capacious. Thus, a plain-language reading suggests that to send a text message is to "try to get or to get into communication by telephone."…

There is nothing in the meaning of "telephone" that excludes the function of a text message. Remarkably relevant here is the classic case of *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987). In that case, Judge Easterbrook considered a Wisconsin statute that made certain farming property unavailable to satisfy a civil judgment, allowing a farmer to retain "one mower" and "one hay loader." *Id.* at 1091-92. Just one problem: since the law's passage in 1935, farm technology had changed considerably. Old horse-drawn "mowers" were replaced by hydraulic, tractor-mounted haybines with hay conditioners, and "hay loaders" were replaced by automatic bailing/tying machines. *Id.* at 1092-93. And yet, the court found that the new technology was embraced by the old terms. Specifically, Judge Easterbrook wrote that a "'mower' is not limited to the thing called a mower today," because "[a] statutory word of description does not designate a particular item (e.g., "a Massey-Ferguson Mower, Model GY—2589, manufactured in 1935, serial number 3875808") but a *class of things* that share some important feature." *Id.* at 1092 (emphasis added). Indeed, "a mower with a built-in stereo cassette deck would still be a 'mower', . . . because it would still cut the hay," yet with "a second function, entertainment, just as the haybine has a second function, crushing the hay." *Id.* at 1093.

The Court finds this reasoning persuasive here. Defendant seems to define "telephone call" as "a call from a telephone as existed in 1991"—that is, *only* able to communicate by voice. But if "telephone" was as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute. Thus, voice calls from almost every modern telephone—most of which can text, among many other capabilities—would not qualify as a "telephone call" under § 227(c)(5). "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quotation omitted). Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone. And just as an aircraft built a hundred years from now such that it "could not have been dreamed today" can be embraced by 2012 statute regulating aircraft, so can a call from a telephone built in 2025—or 2125 for that matter—be embraced by a 1991 statute. Scalia & Garner, *supra*, at 16. Later meaning ascribed to words like "text message" cannot affect the Courts analysis of the original meaning of the phrase; in fact, considering the broad original meaning of "call" in 1991, society reasonably might have decided to refer to all telephone communications as "calls." That society does not today has no bearing here.

This reading is bolstered by the technology's history. First, it is known that cellphones and text-messaging services displaced pagers (or "beepers") as everyday technology.**6** That was largely because pagers and cellphones served many of the same uses. *See* Jeffrey Selingo, *The Bell Is Tolling For the Beeper*, N.Y. TIMES, April 11, 2002, at G4 ("[M]any . . . are buying two-way pagers like the BlackBerry, which allow them to answer a message without searching for a phone."). By 1990, pagers could display alphanumeric messages, which were sent by *calling* the pager from a telephone. *See Radio Pager With Display*, N.Y. TIMES, July 6, 1981, at D3; Calvin Sims, *Checking Your Watch For Messages, Too*, N.Y. TIMES, Nov. 8, 1989, at D9. Although Plaintiff likely received the text messages at issue via a modern cellphone data messaging service, in 1991 he might very well have received [*14] messages to his pager, sent via telephone calls. If the latter is covered by the statute, why not the former?

At bottom, it is true that a telephone in 1991 was an instrument "for producing sounds at a distance." So is a telephone today. But that instrument may also send messages via "calls." Thus, to make a "telephone call," for purposes of § 227(c)(5), is to "to get or try to get into communication" with an "instrument for producing sounds at a distance." A text message therefore falls reasonably within the literal language of the statute…

First, Section 227(c)(5) explicitly confers a private right of action for "violation of the regulations prescribed *under this subsection*[.]" 47 U.S.C. § 227(c)(5). As Plaintiff points out, section 227(c)(1) and (2) make clear that [*15] the subsection

3

was included to direct the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object[,]" and to promulgate regulations in furtherance of that interest. 47 U.S.C. §§ 227(c)(1)-(2) (emphasis added). And the TCPA defines "telephone solicitations": the "initiation of a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *Id.* at § 227(a)(4) (emphasis added). This language is broad, coloring the cause of action and the entire subsection it enforces. Congress added that definition later, after text messaging had become commonplace. Some courts have interpreted that amendment to § 227(c)(1)—and concurrent lack thereof to § 227(c)(5)—as evidence that Congress "intend[ed] different meanings" for the two provisions. *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025) (quotation omitted). But those two provisions are within the same subsection. An equally plausible implication may be drawn that Congress believed its definition of "telephone solicitation" in the directive of the subsection, combined with the FCC's interpretation, was enough to broaden [*16] the subsection's cause of action to include *all* telephone solicitations. Indeed, "it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones." *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025).

Second, the Court cannot ignore the fact that Section 227(b) of the TCPA uses the same term—"telephone call"—as it does in § 227(c). As mentioned previously, the FCC as well as myriad courts have for years interpreted "telephone call" in § 227(b) to include text messages. *See supra* note 3. Importantly, that usage has been ratified by Congress. *See Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in § 227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). As the Supreme Court has held, "[w]here, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969)). This ratification is, of course, only "conclusive" as to § 227(b); that said, it remains strongly persuasive as to a subsection of the same statute that uses identical language.

In sum, both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative "telephone calls" to persons on the National Do-Not-Call List.

*Id.* at *8-17.

Plaintiff respectfully requests that the Court consider this submission as further authority

4

supporting Plaintiff's opposition to Defendant's motion.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: January 28, 2026 | */s/ Anthony I. Paronich* <br> Anthony I. Paronich <br> Paronich Law, P.C. <br> 350 Lincoln Street, Suite 2400 <br> Hingham, MA 02043 <br> (508) 221-1510 <br> anthony@paronichlaw.com <br><br> *Attorneys for Plaintiff and the putative Class* |