**Jeffrey G. Bradford**, OSB No. 133080
jeff.bradford@tonkon.com
**TONKON TORP LLP**
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Telephone: (503) 802-5724
Facsimile: (503) 274-8779

**Lauri A. Mazzuchetti**, *Pro Hac Vice*
lmazzuchetti@kelleydrye.com
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

**Damon W. Suden**, *Pro Hac Vice*
dsuden@kelleydrye.com
**Frances V. McDonald,** *Pro Hac Vice*
fmcdonald@kelleydrye.com
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7987

*Attorneys for Defendant Cirkul, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| **CHET MICHAEL WILSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CIRKUL, INC.**,<br><br>Defendant. | Civil No. 6:25-cv-02036-AP<br><br>**DEFENDANT CIRKUL'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Cirkul, Inc. ("Cirkul") respectfully submits this reply memorandum in response to Plaintiff's Opposition ("Opposition" or "Opp.") and in further support of its Motion to Dismiss Plaintiff's Complaint (the "Motion" or "Mot.").[1]

## I.     INTRODUCTION

Plaintiff's Opposition fails to cure the fundamental defects identified in Cirkul's Motion. Instead, Plaintiff doubles down on interpretations of the TCPA that (i) contradict the statute's plain text, (ii) disregard its structure, (iii) flout binding principles of statutory construction, and (iv) rely on outdated agency guidance and inapposite case law.  Unable to show that his text-message claims fall within Section 227(c)'s narrow private right of action, Plaintiff asks this Court to disregard the statute's ordinary meaning, which applies to "telephone calls" made to "residential telephone subscribers," in favor of a strained reading that would encompass "text messages."  The Court should decline that invitation and enforce the TCPA as written, rather than rewriting Section 227(c) to reach claims Congress did not authorize.  Plaintiff's Complaint should be dismissed.

## II.    ARGUMENT

### A.    Plaintiff's Opposition Fails to Establish That Text Messages Are Covered by Section 227(c)

Plaintiff argues that "[t]he TCPA authorizes recipients of unwanted '*telephone solicitations*' to sue for violations of the FCC's Do Not Call List rules.  47 U.S.C. § 227(c)(5)." (Opp. at 11 (emphasis added).)  Not so.  Section 227(c)(5)—which creates the private right of action under which Plaintiff sues—does not mention "telephone solicitations" at all.  Rather, it only authorizes suit where a person has "received more than one *telephone call* within any 12-month period . . . in violation of the regulations prescribed under this subsection."  (emphasis

---

[1]    All terms not otherwise defined herein have the same definition as used in the Motion.

PAGE 2 – DEFENDANT CIRKUL'S REPLY IN SUPPORT OF MOTION TO DISMISS

added). Plaintiff's entire argument, therefore, rests on an incorrect conflation of "telephone solicitation" with "telephone call." As previously explained, however, the two terms are different and Section 227(c)(5)'s private right of action only applies to "calls," not other types of "solicitations." (Mot. at 8.) In an attempt to avoid this outcome, Plaintiff argues that "call" should nevertheless be construed to include all types of solicitations, including text messages, relying on other provisions of Section 227 and case law interpreting them. These efforts fail.

*First*, Plaintiff argues that "the core of § 227(c) is its prohibition on sending 'telephone solicitations' to numbers on the Do Not Call List" and "telephone solicitation" is defined to include both "a telephone call or message." (Opp. at 12 (citing 47 U.S.C. § 227(a)(4).) But this argument ignores that Section 227(c)(5) only provides a private right of action for receipt of a "call"—intentionally omitting "message" (or any other type of solicitation) from its scope. (Mot. at 8–10.) Thus, the arguably broad definition of a "solicitation" in Section 227(a)(4) confirms Congress's choice to exclude "messages" from the scope of Section 227(c)(5). *See Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025).

*Second*, relying on Section 227(c)(1)(D), Plaintiff argues that "there is only one other reference to 'calls' in § 227(c), and it has the same breadth as 'telephone solicitations.'" (Opp. at 14.) But this is not true. Section 227(c)(1)(D) provides that the FCC should assess the need for additional statutory authority "to further restrict telephone solicitations, *including those calls* exempted under subsection (a)(3)" (emphasis added). Thus, by using the word "including," this subsection actually confirms that calls are a *subset* of solicitations—the two terms do not have "the same breadth."

*Third*, Plaintiff asserts that because Section 227(c)(5) authorizes suit for receipt of calls "in violation of the regulations proscribed under this subsection," the scope of the private cause of

PAGE 3 – DEFENDANT CIRKUL'S REPLY IN SUPPORT OF MOTION TO DISMISS

action must be coextensive with the scope of regulatory authority granted to the FCC.  Opp. at 13.  But this is inconsistent with the statutory text.  Congress carefully provided for limited private rights of action for some but not other violations of the TCPA.  For example, Section 227(b)(3) permits a cause of action for any violation of that subsection and related regulations.  By contrast, Section 227(d)—governing technical and procedural standards—does not provide for any cause of action.  *See Haas v. PMCW*, Case No. 3:12-cv-00570, 2013 WL 12116598, at *3 (S.D. Cal. Nov. 5, 2013) (no private right of action for violation of regulations promulgated under Section 227(d)).

Section 227(c)(5) is in between—it authorizes a private right of action for violations of that subsection and related regulations *but only* where the plaintiff has received two or more "telephone calls" within a 12 month period.  Plaintiff's attempt to broaden the scope of that private right of action to permit suit any time the regulations are violated will upset the carefully calibrated statutory scheme devised by Congress, a principle courts have recognized in other statutory contexts and that applies with equal force to the TCPA.  *Cf. Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 382 (2014) ("[T]he scope of the private right of action is more limited than the scope of the statutes upon which it is based."); *Hernandez v. Mesa*, 589 U.S. 93, 100 (2020) (interpreting a private right of action broadly "upset[s] the careful balance of interests struck by the lawmakers.").  Simply put, Plaintiff cannot read a broad private remedy into Section 227(c)(5) just because Congress granted the FCC authority to regulate broadly under Section 227(c)(1).

***Fourth***, Plaintiff again conflates various sections of the statute when he argues that the Ninth Circuit has "[u]nequivocally [s]tated that a text message [c]onstitutes a call under the TCPA." (Opp. at 19.)  As explained in the Motion, the Ninth Circuit ***has not*** directly addressed whether Congress intended for Section 227(c) to apply to text messages, nor has it analyzed the

issue under the post-*Loper Bright* and *McKesson* framework as required. (Mot. at 4.) Both *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) and *Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273 (9th Cir. Jan. 13, 2026), concern the interpretation of Section 227(b)—not (c)—and are therefore not binding here. (Mot. at 7.) As Cirkul previously noted, there is no Ninth Circuit authority holding that a "telephone call" under Section 227(c)(5) includes "text messages."

*Fifth*, the other cases cited by Plaintiff are equally unavailing. For instance, in *Wilson v. Better Mortgage Corp.*, a non-binding decision from the Southern District of New York, the district court relied on Section 227(b) case law and the statute's perceived purpose, rather than its plain text, to find Section 227(c) applies to text messages. *See* ____F. Supp. 3d.____, 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025). *Wilson v. Hard Eight Nutrition LLC*, from this District, is also unhelpful because that case concerned whether a cell phone is a "residential phone" under the TCPA—not whether Section 227(c)(5) applies to text messages. *See* No. 6:25-cv-00144-AA, 2025 WL 1784815, at *2 (D. Or. June 27, 2025). *Wilson v. Skopos Financial, LLC* concluded that texts are calls under Section 227(c)(5) by adopting the FCC's interpretation because it was supposedly "congruent with Congress's overarching goals"—but did not undertake the independent statutory analysis required by *Loper Bright* or *McKesson*.[2] No. 6:25-cv-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). Finally, Plaintiff's supplemental authority,

---

[2] For example, the court held that "the mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Id.* at *2. But Congress *did* envision the ubiquity of text messaging in 2018 when it explicitly defined "text message" in Section 227(e)(8)(C) and chose not to incorporate that definition into Section 227(c) or make any corresponding changes to the private right of action. *See* Pub. L. 115-141, § 503, 132 Stat 348, 1091-94 (2018) (extending the anti-spoofing provision of § 227(e)(1) to "text message services" and clarifying that "text messaging service" and "voice service" are distinct under § 227(e)(8)(B) and (D)). Congress's decision to update one part of the TCPA—but not others—to cover text messages should be an important part of any statutory analysis.

PAGE 5 – DEFENDANT CIRKUL'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Alvarez v. Fiesta Nissan, Inc.*, Case No. 7:25-cv-00343, 2026 WL 202930, at *4–6 (S.D. Tex. Jan. 26, 2026) fails to offer an interpretation that best accords with the statute's text and structure, as established in Cirkul's Motion.

**Sixth**, Plaintiff's effort to distinguish or minimize the cases cited by Cirkul fails. Plaintiff first contends that the district courts in *Jones* and *Davis* "abdicated their interpretive responsibility" in part by failing to consider the TCPA's purposes, including those allegedly informed by the "experiences and needs of deaf and hard-of-hearing individuals." (Opp. at 17.) This contention defies both common sense and Supreme Court precedent. *See McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) (instructing district courts to "determine the meaning of the law under ordinary principles of statutory interpretation"). Courts do not "abdicate" their "interpretive responsibility" by applying a statute as written. Accordingly, the text-based analyses in *Davis* and *Jones* are far more persuasive than Plaintiff's purpose-driven argument.

**Finally**, Plaintiff urges the Court to defer to the FCC's interpretation of the TCPA, arguing that the agency's view should "carry the day" if the Court harbors any doubt about the statute's meaning. (Opp. at 17.) While this Court may consider the FCC's position, it "is not bound by the FCC's interpretation of the TCPA." *McKesson Corp.*, 606 U.S. at 168. Put differently, it is the role of this Court, not the FCC, to "say what the law is."[3] *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

---

[3] On January 27, 2026, the Ninth Circuit denied the petition for interlocutory appeal in *Dilanyan v. Hugo Boss, Inc.*, which sought the Ninth Circuit's review as to whether a text message constitutes a "telephone call" under Section 227(c). *See* Case No. 25-7951, Dkt. 7.1. Notwithstanding the denied petition in *Dilanyan*, Cirkul respectfully maintains the Motion's request for immediate interlocutory appeal, should this Court find that *Satterfield* or *Howard* applies to Section 227(c). (Mot. at 10–11.)

**B.     Plaintiff's Opposition Fails to Establish That Section 227(c) Applies to Cellular Telephone Subscribers**

Plaintiff admits, as he must, that Section 227(c) only protects "residential telephone subscribers." (Opp. at 6 ("consider who is protected: 'residential telephone subscribers' or elsewhere just 'residential subscribers'").) He nevertheless argues that cell phones are within the scope of the statute because "'residential' is just the opposite of 'business'" and therefore covers any phone used for "personal activities associated with his or her personal, domestic life." (Opp. at 6 (citing *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 206–07 (S.D.N.Y. 2024)).) But, as explained in the Motion, this interpretation distorts the common meaning of the term "residential telephone subscriber" as referring to a telephone in the home—not a cell phone that can be carried anywhere. (Mot. at 11–12); *Moore v. Triumph CSR Acquisition, LLC,* No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023) ("A cellular phone and a residential phone are not the same thing."). Plaintiff's interpretation is also contrary to the statutory text and structure in which Congress distinguished between residential phones and cell phones in other parts of the statute. (Mot. at 13–15); *Moore*, 2023 WL 8601528, at *2 ("The fact that the statute uses 'residential telephone line' and 'cellular telephone service' in close proximity is a strong clue that the two terms do not mean the same thing.").

Plaintiff attempts to support his interpretation by arguing that it "aligns" with the purpose of the Do Not Call List—to protect "privacy rights"—and that privacy can be invaded on a cell phone or landline. (Opp. at 6–7 (citing cases).) But this argument elides the statute's true purpose, which was to prevent invasion of privacy ***in the home***. *See* Pub. L. 102-243, § 2, 105 Stat. 2394, 2394-95 (1991) (finding that the TCPA was intended to restrict calls made "to the home"). This is why Congress specifically used the phrase "residential telephone subscriber" and did not include "cellular telephone service" in Section 227(c). *See*, *e.g.*, *Gaker v. Q3M Ins. Sols.,* No. 3:22-cv-

PAGE 7 – DEFENDANT CIRKUL'S REPLY IN SUPPORT OF MOTION TO DISMISS

00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) ("[c]ell phones do not present the same concerns as residential phones," as their "mobility and functionality to silence or decline calls alleviate the concerns inherent with a home telephone"). Accepting Plaintiff's interpretation would render Congress's repeated distinction between "residential" and "cellular" telephones meaningless. (*See* Mot. at 15.) Congress knew what cellular telephones were in 1991. It repeatedly referenced them in Section 227(b). Thus, its decision not to include cellular subscribers in Section 227(c) triggers the "negative inference . . . drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).

Plaintiff's citation to *Wilson v. Hard Eight* is misguided because that decision merely deferred to non-binding FCC guidance instead of undertaking the necessary statutory analysis. (Opp. at 10–11 (quoting *Hard Eight*, 2025 WL 1784815, at *5.).) As set forth above, the Supreme Court's decisions in *Loper Bright* and *McKesson* have wiped the slate clean for courts to analyze the plain statutory text of the TCPA—any decisions that blindly rely upon FCC guidance are not persuasive. Moreover, the *Hard Eight* court extended the Do Not Call provision to cell phones because it believed that a call to a cell phone is no less intrusive than a call to a landline—but that is a choice for Congress to make, not the courts, and Congress made the choice to only protect "residential telephones."

Plaintiff cites various subsequent congressional actions as purportedly "making clearer and clearer" Congress's intent that cell phones were to be covered. (Opp. at 7.) But "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) (citations omitted). Even where legislative history post-enactment might be relevant, Plaintiff identifies no action here that

would suggest Congress intended to redefine "residential telephone subscriber" in Section 227(c). *See Massachusetts v. E.P.A.*, 549 U.S. 497, 529 (2007) (rejecting argument that "postenactment congressional actions and deliberations" were "tantamount to a congressional command" that contradicted a statute's unambiguous text). Plaintiff's reliance on later statutes that amended different provisions to include cellular telephones is similarly misplaced. (Opp. at 7 (citing Telecommunications Act of 1996, Pub. L. No. 104–104, § 3(a)(1)(B), 110 Stat. 56, 58 (1996).) Simply put, Congress's decision to include cellular telephones in other statutory provisions does not illuminate the meaning of "residential telephone subscriber" as used in Section 227(c) in 1991.

Nor does the Do Not Call Implementation Act, "remove any doubt" that Section 227(c) applies to cell phones. (Opp. at 7 (citing Pub. L. No. 108–10, 117 Stat. 557 (2003).) That statute directed the FCC to "consult and coordinate with the [FTC] to maximize consistency with" the FTC rule. Plaintiff argues that the FTC rule included cellular telephones, so "'maximiz[ing] consistency' with the FTC's rule . . . necessarily meant extending § 227(c)'s protections to mobile subscribers." (Opp. at 7.) But "maximize consistency" only meant that the agencies were to coordinate to the extent their statutory authority allowed. It did not expand that authority.

Finally, Plaintiff's contention that Congress expressly delegated authority to define the scope of the statute by "fill[ing] up the details" of the TCPA is meritless. (Opp. at 8.) Unlike the statutes in *Loper Bright*, which expressly delegated definitional authority, the TCPA contains no placeholder language authorizing the FCC to alter the statute's scope. And in any event, a "generic grant of rulemaking authority to fill gaps" in the TCPA "does not allow the FCC to alter the specific choices Congress made." *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025) (quoting *Nat'l Ass'n of Broads. v. FCC*, 39 F.4th 817, 820 (D.C. Cir. 2022)).

### III.  CONCLUSION

For the foregoing reasons, Cirkul respectfully requests that this Court enter an order

dismissing Plaintiff's Complaint in its entirety.

DATED: February 9, 2026

        TONKON TORP LLP

        By: */s/ Jeffrey G. Bradford*
            Jeffrey G. Bradford, OSB No. 133080
            jeff.bradford@tonkon.com
            Telephone: (503) 802-5724

        KELLEY DRYE & WARREN LLP
            Lauri A. Mazzuchetti, *Pro Hac Vice*
            lmazzuchetti@kelleydrye.com
            Damon W. Suden, *Pro Hac Vice*
            dsuden@kelleydrye.com
            Frances V. McDonald, *Pro Hac Vice*
            fmcdonald@kelleydrye.com

        *Attorneys for Defendant Cirkul, Inc.*