IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | Case No. 6:25-cv-02036-AP |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| CIRKUL INC., | |
| Defendant. | |

POTTER, United States Magistrate Judge:

Chet Michael Wilson (Plaintiff) filed this putative class action against Cirkul Inc., (Defendant), based on purported violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq. Defendant now moves to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Defendant's motion should be denied.

## BACKGROUND

In his Complaint, Plaintiff alleges he is the "subscriber to and customary user of his cellular telephone." Compl. ¶ 10. Plaintiff alleges he uses his cellular telephone for "personal and household purposes." Compl. ¶ 13. Plaintiff states that he received "at least 6 text messages" from Defendant to his private phone number, despite his number being on the National Do Not Call Registry (DNCR). Compl. ¶¶ 18-19. The Complaint alleges these six text messages constitute violations of the Do-Not-Call (DNC) provision of the TCPA. In Plaintiff's view, the text messages at issue were sent for marketing and advertising purposes. Compl. ¶ 24. According

PAGE 1 – FINDINGS AND RECOMMENDATION

to Plaintiff, Defendant's alleged violations of the TCPA caused him actual harm, including "invasion of privacy, an intrusion into his life, and a private nuisance." Compl. ¶ 27.

Plaintiff brings class allegations under Fed. R. Civ. P. 23 and Local Rule 23-2, on behalf of a proposed Class, including:

> All persons throughout the United States (1) who did not provide their telephone number to Defendant, (2) to whom Defendant delivered, or caused to be delivered more than one voice message or text message within a 12-month period, promoting Defendant's goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Defendant delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

Compl. ¶ 29. Plaintiff seeks class wide damages, as outlined in 47 C.F.R. § 64.1200(c)(5).

Defendant now moves to dismiss Plaintiff's Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failing to plead sufficient facts to support his National DNC Registry claim. Def.'s Mot. 2-3, ECF No. 17. Defendant first argues that Plaintiff's Complaint is legally deficient because Section 227(c) of the TCPA "does not extend to cellular telephone numbers or text messages." Def.'s Mot. 2. Alternatively, Defendant argues that the Court certify the question of whether text messages are telephone calls under Section 227(c)(5) for interlocutory appeal.

Finally, Defendant argues that Plaintiff's status as a "serial litigant" who "uses his 9999 number as a vehicle to manufacture lawsuits" renders Plaintiff's telephone number a business phone number, and thus not eligible to bring a claim under § 227(c)(5). Def.'s Mot. 3. For the reasons discussed below, Defendant's motions should be denied.

## STANDARD OF REVIEW

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion to dismiss, the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in

PAGE 2 – FINDINGS AND RECOMMENDATION

favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must constitute "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Although the court must take the allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 555). If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Congress passed the TCPA to combat intrusive telemarketing tactics; it created the DNCR to allow consumers to opt out of receiving telephone solicitations. 47 U.S.C. § 227(c)(5). Companies run afoul of the TCPA when they solicit people who have placed their phone number on the DNCR. 47 C.F.R. § 64.1200(c)(2). When the TCPA was enacted in 1991, most consumers had landlines but today, cell phones predominate. *See In re Rules and Regul. Implementing the Tel. Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014 (July 3, 2003) (hereinafter "2003 Report and Order"). Section 227(c)(5) of the TCPA creates a cause of action when a plaintiff receives "more than one telephone call within any 12-month period." 47 U.S.C. § 227(c)(5). Here, the Plaintiff complains about text messages sent to his cell phone. Defendant

PAGE 3 – FINDINGS AND RECOMMENDATION

responds that § 227(c) does not apply to text messages or cell phones. For the reasons discussed below, the Court disagrees.

## I.    The Do-Not-Call Provision of the TCPA

Section 227(c) of the TCPA authorized the FCC to create a "single national database" of telephone numbers of "residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3). In response, the FCC created the National Do-Not-Call Registry which allows consumers to opt out of receiving marketing calls by placing their numbers on a national registry. 47 C.F.R. § 64.1200(c)(2). The "sole and express aim" of the TCPA's do-not-call provision is "'to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.'" *Wilson v. Hard Eight Nutrition LLC,* 804 F. Supp. 3d 1141, 1150 (D. Or. 2025) (quoting 47 U.S.C. § 227(c)). To that end, the TCPA provides a private right of action for do-not-call violations. 47 U.S.C. § 227(c)(5). To support a claim under the DNC provision of the TCPA, a plaintiff must allege facts showing that his telephone number is on the national DNC registry and that he received more than one telephone solicitation "within any 12-month period by or on behalf of the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Notably, the TCPA provides for statutory damages of $500 for each telephone solicitation call received, and treble damages where such telephone solicitations are made knowingly and/or willfully. 47 U.S.C. § 227(c)(5)(B)-(C).

### A.  Text messages are calls under § 227(c)

Here, Plaintiff's claims are based on his receipt of six text messages to his cell phone which is on the DNCR. Defendant contends that these text messages do not violate the TCPA's DNC provision because the statutory language references "telephone calls" not text messages. Def.'s Mot. 7. This issue has been heavily litigated recently and as Defendant acknowledges,

PAGE 4 – FINDINGS AND RECOMMENDATION

many courts within and outside of this circuit have concluded that texts are calls for purposes of the TCPA. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009); *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023); *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026); *Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274 (D. Or. July 21, 2025); *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025); *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024). But recently some courts have reached the opposite conclusion. *See, e.g., Wilson v. Easy Spirit LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *4 n.3 (D. Conn. Mar. 31, 2026) (noting this issue has split the federal courts and citing cases). Here, the Court concludes that based on Ninth Circuit precedent as well as an independent review of the statute, text messages are calls under § 227(c).

### 1. Existing Ninth Circuit precedent

As a starting point, the Ninth Circuit has previously concluded, in a case involving a different section of the TCPA, "that a text message is a 'call' within the meaning of the TCPA." *See Satterfield*, 569 F.3d 946. But in *Satterfield* the Ninth Circuit deferred to the FCC's interpretation of the statute (that a call included text messages) under the then-existing standard of review under *Chevron U.S.A. Inc., v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *Satterfield,* 569 F.3d at 954 (concluding that because the TCPA is silent as to whether calls include text messages the Court must defer to the agency's "permissible construction of the statute"). And as the Defendant points out, the Supreme Court in two recent decisions—decided after *Satterfield*— overturned prior decisions requiring deference to agency decisions. *See Loper Bright Enters. v. Raimondo Inc.*, 603 U.S. 369 (2024); *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). Now, instead of deferring to agency interpretation, courts

"must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin*, 606 U.S. at 155.

That said, the Supreme Court made clear that the principles of stare decisis still applied to cases that deferred to agency interpretation. *See Loper Bright*, 603 U.S. at 412 ("[W]e do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory stare decisis despite our change in interpretive methodology."). And before disregarding Ninth Circuit precedent, this Court must consider whether *Satterfield* is "clearly irreconcilable" with *Loper Bright* and *McLaughlin*. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). It is not.

While the *Satterfield* Court deferred to the FCC's "permissible" construction of the statute, it did so only after conducting a careful analysis of the statute itself. 569 F.3d at 953-54. Recognizing that "'the starting point for interpreting a statute is the language of the statute itself," the Court examined the words in the statute "'in their context and with a view to their place in the overall statutory scheme.'" *Id*. at 953. The Court then concluded that defining the term "to make any call" to include text messages was consistent with the "ordinary, contemporary, and common meaning of the verb 'to call.'" *Id.* It was also consistent with the purpose of the statute to prevent the invasion of privacy caused by telemarking calls. *Id.* at 954. The Court went further and examined the FCC's regulations only because it recognized that Congress could not speak clearly on the issue of text message when the statute was enacted in 1991; it then concluded that the regulations were consistent with the statute. *Id.* at 954. This analysis survives post-*Chevron*.

Recently, the Ninth Circuit specifically reviewed the *Satterfield* analysis of the meaning of the word "call" post-*Loper Bright* and *McLaughlin*. *Howard*, 164 F.4th at 1122. The *Howard*

PAGE 6 – FINDINGS AND RECOMMENDATION

Court concluded that while the *Satterfield* Court framed its holding as one of deference to the FCC's conclusion that text messages were calls, "it is clear from *Satterfield's* substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference." 164 F. 4th at 1123. The *Satterfield* Court "emphasized two key points about statutory construction"— the plain and ordinary meaning of the term and the purpose of the statute—supported the FCC's definition of "call." *Id.* "[A]nd even under de novo review, those same two points support the conclusion that a 'text message' constitutes a 'call' within the meaning of the TCPA." *Id.* Defendant correctly points out that *Howard*, like *Satterfield*, dealt with § 227(b) not § 227(c), the provision at issue here. But the language in *Howard* is not limited to § 227(b); it concerns the more general definition of a call. And it controls here.

The decisions in *Satterfield* and *Howard* are not "clearly irreconcilable" with *Loper Bright* and *McLaughlin*; the decisions remain controlling law. A text message is a call for purposes of § 227(c). But even if they did not, an independent review of both the plain language of the statute and of the statutory purpose supports the conclusion that a text message is a call within the meaning of § 227(c).

2. *The plain language of the statute*

The plain language of the statute supports the conclusion that text messages are calls within the meaning of the TCPA. *See Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) *amended on reh'g sub nom. Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 360 F.3d 1374 (9th Cir. 2004) ("It is well settled that the starting point for interpreting a statute is the language of the statute itself.") (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56, (1987)). In interpreting statutory language, courts must consider the "ordinary public meaning of its terms at the time of its enactment." *Bostock v.*

*Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020). And "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989).

At the time the TCPA was enacted, the ordinary public meaning of a "telephone call" was a communication made by telephone. *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025) (citing Webster's Ninth New Collegiate Dictionary 197 (1989) ("the act of calling on the telephone," *i.e.*, "to get or try to get into communication by telephone," or "to deliver (a message) by telephone")). A text message fits within this "broad definition." *Id*. Limiting "call" to a voice call would ignore the contemporary, ordinary meaning of the word in the context of the statute. *Easy Spirit*, 2026 WL 884170, at *5.

Not all courts agree, though, and Defendant points to several district court cases that reached the opposite conclusion to support their argument. Def.'s Mot. 7-9. Some courts have concluded that the term "telephone call" would not have included text messages in 1991 because it was not available at the time. *See, e.g., Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025). Others have concluded that a text message was not a call within the meaning of the Act, because "no ordinary person would think of a text message as a 'telephone call.'" *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). This rationale ignores the fact that the operative definition must be what the plain and ordinary meaning of a telephone call was "at the time of enactment." *Loper Bright*, 603 U.S. at 400. While an individual today might not refer to a text as a telephone call, most individuals would agree that both texts and telephone calls are types of communication made by telephone. Thus, both fit within the meaning of a call at the time of the TCPA's enactment. And while there is no dispute

PAGE 8 – FINDINGS AND RECOMMENDATION

that Congress could not have contemplated text messages at the time the statute was enacted in 1991, it was able to define the type of conduct it intended to prohibit, namely, unwelcome communications via telephone. This clearly includes text messages.

3.  *Statutory purpose*

As discussed, the TCPA aims to protect citizens from unwanted and intrusive telemarketing tactics. 47 U.S.C. § 227. Section 227(c) was created specifically "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1); *see also Hard Eight Nutrition*, 804 F. Supp. 3d. at 1150 ("The do-not-call provision's sole and express aim is 'to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.'") (quoting 47 U.S.C. § 227(c)). Unsolicited text messages fall squarely in the realm of the harms Congress was trying to prevent in enacting the TCPA. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). Thus, "treating a text message as a 'call' [is] consistent with the statute's declared purpose 'to protect' 'privacy rights.'" *Howard*, 164 F.4th at 1124 (quoting 47 U.S.C. § 227(b)(2)(B)(ii)(I) and § 227(b)(2)(C)).

Defendant argues that this Court should rethink the statutory intent of the TCPA with regards to text messages because the "TCPA has been amended numerous times since its enactment in 1991, but it was not until 2018 . . . that Congress first defined the term text message in the TCPA at § 227(e)(8)(C)." Def.'s Mot. 9 (citing *Sayed v. Naturopathica Holistic Health, Inc.,* No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)). In *Sayed*, the district court concluded that because Congress had separately used both the terms "text message" and "a telephone call," that the TCPA was created with those distinctions in mind. 2025 WL 2997759, at *2. But the term text message was not included in the language of the

PAGE 9 – FINDINGS AND RECOMMENDATION

original statute and the references to text messages that were added in 2018 were added to a different provision of the statute. That is simply not enough to conclude that Congress did not intend to encompass text messages in the DNC provision of the statute.

In sum, based on this Court's independent review of the statutory language of § 227(c), and the purpose under which the statute was created, a text message is a telephone call within meaning of the TCPA.

### B. TCPA DNC provisions are not limited to landline telephones

Defendant makes a similar argument that Section 227(c) protects only residential "land-line" phones. Def.'s Mot. 11-15. According to Defendant, Congress intended to differentiate between landline and cellular telephone services because Section 227(b) addresses both cellular phone service and residential phone lines, while Section 227(c) addresses only residential lines. And to the extent the Ninth Circuit held otherwise in *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022), the decisions in *Loper Bright* and *McLaughlin* call that into question. The Court disagrees.

The TCPA contains multiple provisions. In § 227(c), the TCPA "protect[s] residential telephone subscribers' privacy rights." § 227(c)(1). To protect their rights, those subscribers put their number on the DNCR. The focus is protecting the privacy interests by stopping repeated calls to residential numbers. Separately, in § 227(b), Congress focused on prohibiting certain types of calls that relied on certain technology to make the calls. It prohibits, among other things, initiating calls to a "residential telephone line" using automated dialing. § 227(b)(1)(B).

Unlike the use of the term "call" that appears in both sections, the use of the term "line" from § 227(b) does not appear in § 227(c). Congress's de**cisi**on to address only "residential telephone lines" in one section while providing more broad protections in § 227(c) to "residential

telephone subscribers" suggests that Congress knew how to limit the TCPA to landlines and declined to do so in § 227(c). *See Showers v. Pelican Inv. Holdings Grp., LLC*, No. 3:23-CV-02864-NJR, 2026 WL 251730, at *5 (S.D. Ill. Jan. 30, 2026). This is consistent with the purpose of § 227(c) which focused on the subscriber's privacy interest as opposed to the technology used to make the calls. *Hard Eight Nutrition*, 804 F. Supp. 3d at 1148 (rejecting defendant's argument as relying on a "strained apples-to-apples comparison of Sections 227(b) and 227(c)" and noting that § 227(c) is not limited to specific technologies).

The plain language of the statute supports the conclusion that § 227(c) applies to cellular telephones. At the time the TCPA was passed, a subscriber was one who received regular services and residential was something used at a residence. *Id.* at 1149 (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1989)). A cell phone user is clearly a subscriber to a regular telephone service, and a personal cell phone is used at a residence and for private calls. Thus, the plain language of the statute supports the conclusion that § 227(c) applies to cellular telephones.

It is also consistent with the statute's purpose to apply § 277(c) to cellular telephones. Section 227(c) of the TCPA was designed to protect people who subscribed to telephone services that they used in the home or for private purposes. *Id.* at 1149-50. A personal cell phone fits in this category.

At bottom, applying the provision of § 227(c) to cellular telephones is consistent with both the plain meaning of the text and the purpose of the statute. Congress made clear the TCPA was intended to protect consumers from receiving unwanted telephone solicitations. Defendant would have that protection limited to only those consumers with landline telephones, and not those among the growing number of households who choose to only maintain a cellular

PAGE 11 – FINDINGS AND RECOMMENDATION

telephone. But Congress made no such distinction in crafting the TCPA. Nor has Congress taken steps to introduce such limits by amendment.[1]

In sum, after independently reviewing both the text and purpose of the DNC provision of the TCPA, this Court is satisfied that the protections afforded to consumers in § 227(c) extend to both cellular telephones and text messages.

## II.     Plaintiff's Status as a Prolific TCPA Litigant

Defendant also argues that Plaintiff is a prolific TCPA litigant who uses his telephone for business purposes and is therefore not entitled to protection under the TCPA's DNC provision. Def.'s Mot. 16. Section 227(c)(5) of the TCPA protects only residential, and not business, telephone subscribers. According to Defendant, Plaintiff's phone is used for business purposes, as evidenced by the fact that he has "filed 73 TCPA lawsuits since early 2024." Def.'s Mot. 16. Defendant cites the number of lawsuits filed by Plaintiff to show that his telephone number is "maintained as part of a litigation-driven enterprise, not for residential use." Def.'s Mot. 16. But Plaintiff has attested to the fact that he uses his phone for personal and not business purposes. Compl. ¶ 13. This is sufficient at this stage.

Moreover, even if, as Defendant suggests, Plaintiff's phone number creates conditions that are likely to result in unwanted text messages, nothing in the statute would prevent him from enforcing his right to be free from those text messages under the TCPA. This is consistent with the Ninth Circuit decision in *Chennette*, where the Court concluded that individual's registered cell phones used for both personal and business purposes were presumptively "residential" within the meaning of §227(c)). 50 F.4th at 1225. More generally, the Ninth Circuit has

---

[1] Notably, in 2003, the FCC issued implementing regulations that concluded that "wireless subscribers" were presumptively "residential subscribers" under the DNC provision. *See* 2003 TCPA Report and Order, 18 FCC Rcd. 14014, 14039 and n.139 (2003).

cautioned district courts against making credibility determinations against serial litigants solely on basis of their status as serial litigants. *See Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023) (in evaluating a serial ADA litigant, finding that "there must be something other than the fact that the litigant files a lot of ADA cases to instill doubt in his testimony"); *see also Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2026 WL 810636, at *2 n.4 (D. Or. Mar. 24, 2026) (rejecting argument that plaintiff lacked standing because he was a serial litigant).

Plaintiff in his Complaint has alleged that he uses his cellular telephone for "personal and household purposes." Compl. ¶ 13. At this stage of the case, this is enough to survive a motion to dismiss.

### III.    Defendant's Request for Interlocutory Appeal Should Be Denied

Finally, Defendant has requested that, should the Court deny the motion to dismiss, the question of whether a text message constitutes a telephone call under § 227(c)(5) should be certified for immediate interlocutory appeal under 28 U.S.C. § 1292(b). Def.'s Mot. 10. For the following reasons, Defendant's motion should be denied.

While generally a party cannot seek appellate review until after final judgment, Section 1292(b) establishes "a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Gopher Media LLC v. Melone*, 154 F.4th 696, 701 (9th Cir. 2025) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). An order for interlocutory appeal may be certified if a district court determines that the order "meets the three certification requirements outlined in § 1292(b): '(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion [as to that question], and (3) that an immediate [resolution of that question] may materially advance the ultimate termination of the litigation.'" *ICTSI Oregon, Inc. v. Int'l*

PAGE 13 – FINDINGS AND RECOMMENDATION

*Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citing *In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981)).

First, "[a] controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *Id.* (quoting *In re Cement Antitrust Litig*, 673 F.2d at 1026). Second, substantial grounds for differences of opinion exists where "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (citation modified). Finally, the resolution of a question materially advances the litigation "when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Oregon, Inc.*, 22 F.4th at 1131 (quoting *In re Cement Antitrust Litig*, 673 F.2d at 1027). District courts are cautioned that certification requirements are "stringent" because interlocutory review "must remain a narrow exception." *SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 724 (9th Cir. 2017).

This issue simply does not present the "exceptional circumstances" under which a "'departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Doe LS 340 v. Uber Techs., Inc.*, No. 24-5063, 2025 WL 752485, at *1 (9th Cir. Mar. 10, 2025) (quoting *ICTSI Oregon, Inc.*, 22 F.4th at 1130). While the first and third conditions appear to be met, Defendant cannot demonstrate a "substantial grounds for difference of opinion." No novel or unsettled questions exist within the Ninth Circuit; the recent decision in *Howard*—which was decided after *Loper Bright* and *McLaughlin*—specifically addressed the issue of whether a text message is a call and answered in the affirmative. 164 F.4th at 1124. Given that, this Court cannot conclude that substantial grounds exist under which fair-minded jurists would reach contradictory conclusions.

PAGE 14 – FINDINGS AND RECOMMENDATION

The Ninth Circuit appears to agree. On January 27, 2026, the Ninth Circuit denied interlocutory review on this precise issue. *See* Case No. 25-7951, ECF No. 7.1. In *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025), the district court concluded that "telephone calls and text messages are two distinct forms of communication" and certified the question of whether a text message was a call within the meaning of the TCPA for interlocutory appeal to the Ninth Circuit. The *Dilanyan* court noted that the Ninth Circuit had not had the opportunity to reconsider the conclusions reached in *Satterfield* in the wake of the *Loper Bright* decision and certified the question. *Dilanyan*, 2025 WL 3549868, at *2. But after *Dilanyan* was decided, the Ninth Circuit decided the *Howard* case. *Howard*, 164 F.4th at 1124. Two week later, the Ninth Circuit denied the petition for interlocutory appeal in *Dilanyan*.

Based on this, there are no exceptional grounds under which an appeal for interlocutory review could be certified.

## CONCLUSION

Defendant's motion to dismiss should be DENIED. Defendant's request to certify a question for interlocutory appeal should also be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and

PAGE 15 – FINDINGS AND RECOMMENDATION

will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this __14th__ day of April, 2026.

        _/s/Amy E. Potter_____
        AMY E. POTTER
        United States Magistrate Judge