**Jeffrey G. Bradford**, OSB No. 133080
jeff.bradford@tonkon.com
**TONKON TORP LLP**
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Telephone: (503) 802-5724
Facsimile: (503) 274-8779

**Lauri A. Mazzuchetti**, *Pro Hac Vice*
lmazzuchetti@kelleydrye.com
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

**Damon W. Suden**, *Pro Hac Vice*
dsuden@kelleydrye.com
**Frances V. McDonald,** *Pro Hac Vice*
fmcdonald@kelleydrye.com
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7987

*Attorneys for Defendant Cirkul, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| **CHET MICHAEL WILSON**, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>    v.<br><br>**CIRKUL, INC.**,<br><br>         Defendant. | Civil No. 6:25-cv-02036-AP<br><br>**DEFENDANT CIRKUL'S OBJECTIONS TO FINDINGS AND RECOMMENDATIONS** |

## I.     INTRODUCTION

Defendant Cirkul, Inc. ("Cirkul") respectfully objects to the Magistrate Judge's April 14, 2026 Findings and Recommendations, which recommended that the Court deny Cirkul's motion to dismiss Plaintiff Chet Michael Wilson's ("Plaintiff") Complaint.   (Dkt. No. 29 (the "Recommendation").)  Specifically, Cirkul objects to the Recommendation's conclusion that the "Do Not Call" provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), apply to text messages received on a cellular telephone.   The Recommendation acknowledges that, although the weight of authority in the Ninth Circuit does not support Cirkul's position, the question of whether text messages constitute "telephone calls" for purposes of Section 227(c) is "heavily litigated" and has produced a split among courts.  (Dkt. at 4; *id.* at 8.) Accordingly, Cirkul submits these objections to preserve its arguments for appeal.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on November 2, 2025, alleging that in September and October 2025, he received six "advertis[ing] and market[ing]" text messages from Cirkul on his cellular telephone number, (541) XXX-9999, in violation of the TCPA's National Do Not Call Registry provision under 47 U.S.C. § 227(c)(5).  (Dkt. No. 1, ("Compl.") ¶¶ 10, 18–20, 24.).  On January 22, 2026, Cirkul moved to dismiss Plaintiff's Complaint pursuant to Federal Rule 12(b)(6), arguing that Plaintiff failed to state a claim under the TCPA because Section 227(c) applies only to *telephone calls* not *text messages* and only to calls placed to *residential telephone subscribers* not *cellular telephones*.   (Dkt. No. 17, (the "Motion").)  Plaintiff filed his Opposition to Cirkul's Motion on January 26, 2026 (Dkt. No. 19), and Cirkul filed its Reply in support of the Motion on February 9, 2026.  (Dkt. No. 21.)  Magistrate Judge Potter issued the Recommendation on April 14, 2026, recommending denial of the Motion.  (Dkt. No. 29.)

PAGE 2 – DEFENDANT CIRKUL'S OBJECTIONS TO FINDINGS AND
          RECOMMENDAITON

### III.    ARGUMENT

#### A.    Standard of Review

The Federal Magistrate Act provides that a district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court is free to accept, reject, or modify any part of the recommendation. *See* Fed. R. Civ. P. 72(b)(3).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must credit well-pleaded factual allegations, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Dismissal is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation omitted) (dismissing TCPA claim).

#### B.    Section 227(c) of the TCPA Is Limited to Telephone Calls to Residential Telephone Subscribers

Plaintiff brings a single claim under Section 227(c)(5) of the TCPA. That claim fails because the statute reaches only "telephone calls" directed to "residential telephone subscribers"— not text messages and not cellular phones. *See* 47 U.S.C. § 227(c)(5) (authorizing suit based on receipt of "more than one telephone call"); *id.* § 227(c)(1) (focusing on the privacy of "residential telephone subscribers"). The FCC's implementing regulation mirrors that limitation, prohibiting telephone solicitations to numbers registered on the Do Not Call Registry only where the recipient is a residential subscriber. 47 C.F.R. § 64.1200(c)(2). Plaintiff's allegations do not fit within either requirement.

### 1.    Section 227(c) Does Not Encompass Text Messages

Courts must interpret the TCPA using ordinary tools of construction, without deferring to agency interpretations that depart from the statute's plain language. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). Applying that approach here, the term "telephone call" does not naturally include a text message.

As the Recommendation acknowledged, some courts that have squarely addressed Section 227(c)(5) have concluded that it does not apply to text messages. (Dkt. No. 29 at 5.) For instance, in *Davis v. CVS Pharmacy, Inc.*, the court dismissed a claim based on text communications, explaining that:

> [n]o normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Id.* at 1273; *see also id.* at 1275 (citing H*artford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (cleaned up))). That common understanding is enough where the statutory language is unambiguous. *Id.* at 1275. Other courts have drawn the same distinction, emphasizing the functional differences between the two forms of communication. A telephone call involves real-time voice interaction; a text message does not. *See Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093, 2025 WL 3549868, at *2 (C.D. Cal. Dec. 3, 2025). And because text messaging did not exist when Congress enacted the TCPA in 1991, courts have found it implausible to read "telephone call" as silently encompassing that later-developed technology. *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025). The District Court in *Sayed v. Naturophathica Holistic Health, Inc.* likewise held that "[i]n addition to the fact that in

PAGE 4 – DEFENDANT CIRKUL'S OBJECTIONS TO FINDINGS AND
        RECOMMENDAITON

common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla Oct. 24, 2025).

Congress's subsequent amendments reinforce that conclusion.  When Congress eventually defined "text message" in 2018, it treated it as a separate category and expressly distinguished it from "real time, two-way voice" communications.  47 U.S.C. § 227(e)(8)(C)(iii).   Notably, Congress left Section 227(c) untouched.  That omission is telling: had Congress intended to expand the Do Not Call provisions to cover text messages, it knew how to do so.

Cirkul acknowledges that the majority view, adopted by the Recommendation, is to the contrary but those decisions are distinguishable or unpersuasive for a variety of reasons.  In *Satterfield v. Simon & Schuster, Inc.*, the court—applying *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)—accepted the FCC's view that a text message could qualify as a "call," but only in analyzing Section 227(b) —a separate provision of the TCPA that uses different statutory language.  569 F.3d 946, 954 (9th Cir. 2009).  Likewise, *Howard v. Republican Nat'l Comm.* addressed the same provision and did not consider the scope of Section 227(c)(5)'s private right of action.  No. 23-3826, 2026 WL 90273, at *4 (9th Cir. Jan. 13, 2026).  In *Trim v. Reward Zone USA LLC*, the court analyzed whether written text messages could constitute "prerecorded voice" under Section 227(b), concluding that they could not as they "did not include audible components."  76 F.4th 1157, 1158 (9th Cir. 2023).  *Wilson v. Skopos Fin., LLC*, concluded that texts are calls under Section 227(c)(5) by adopting the FCC's interpretation because it was supposedly "congruent with Congress's overarching goals"—but did not undertake

PAGE 5 – DEFENDANT CIRKUL'S OBJECTIONS TO FINDINGS AND
        RECOMMENDAITON

the independent statutory analysis required by *Loper Bright* or *McKesson*.  No. 6:25-cv-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025).  In *Abboud v. Circle K Stores, Inc.*, the court improperly conflated Section 227(c)(5)'s limited application to "telephone calls" to include the far broader definition of a "telephone solicitations" in Section 227(a)(4), which includes calls and text messages.  *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024).  Finally, *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) reached an incorrect conclusion as it departed from the statute' plain text.  Because these cases are readily distinguishable, they do not resolve whether Section 227(c) extends to text messaging.

For these reasons, a claim under Section 227(c)(5) cannot be predicated on text messaging, and the Court should reject the Recommendation and dismiss the complaint.

### 2. Section 227(c) Is Limited to Residential Telephone Lines, Not Cell Phones

The Recommendation should be rejected for a separate reason: Section 227(c) protects only "residential telephone subscribers."  Courts have repeatedly recognized that this phrase does not encompass cellular telephones.  *See, e.g.*, *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-cv-02921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018); *Cunningham v. Politi*, No. 4:18-cv-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019), *report and recommendation adopted*, 2019 WL 2526536 (E.D. Tex. June 19, 2019) (collecting cases); *see also Gaker v. Q3M Ins. Sols.*, No. 3:22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023); *Cunningham v. Spectrum Tax Relief LLC*, No. 3:16-cv-02283, 2017 WL 3222559, at *6 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.*, No. 3:15-cv-00847, 2017 WL 2719992, at *6 (M.D. Tenn. June 23, 2017).

The distinction reflects both ordinary usage and practical differences.  As one court put it, "[a] cellular phone and a residential phone are not the same thing."  *Moore v. Triumph CSR*

*Acquisition, LLC*, No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023). A residential line is tied to a home; a cell phone is portable and equipped with features—such as call screening and silencing—that mitigate the privacy concerns Congress targeted. *Gaker*, 2023 WL 2472649, at *3.

The statutory language confirms the limitation. The ordinary meaning of "residential" at the time of enactment referred to something connected with a home or dwelling. A "residential telephone," then, is a home telephone—not a mobile device. *See Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019). Congress's drafting choices reinforce that understanding. While Section 227(c) refers only to residential subscribers, other provisions of the TCPA expressly address cellular phones. *See id.* ("[T]he TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)."). That contrast demonstrates that Congress drew a deliberate line between the two categories. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (holding statutory meaning is fixed at enactment). Moreover, courts applying this plain-text approach consistently hold that cell phones fall outside Section 227(c). *See, e.g.*, *Moore*, 2023 WL 8601528, *3; *Morris v. Lincare, Inc.*, No. 8:22-cv-02048, 2023 WL 5336780, at *4 (M.D. Fla. Aug. 18, 2023).

In *Moore*, the district court employed a similar interpretive approach to distinguish between cellular and residential telephones. 2023 WL 8601528, at *2. The plaintiff there asserted a claim under TCPA Section 227(b)(1)(B) based on calls allegedly placed to her cellular phone using automatic dialing equipment. *Id.* at *1 Subsection 227(b)(1)(B) applies only to a "residential telephone line," while "[a] neighboring provision, subsection 227(b)(1)(A)(iii), expressly covers

PAGE 7 – DEFENDANT CIRKUL'S OBJECTIONS TO FINDINGS AND
            RECOMMENDAITON

'cellular telephone service.'" *Id.* at *2.   Focusing on the statutory text, the court emphasized that "[t]he fact that the statute uses 'residential telephone line' and 'cellular telephone service' in close proximity is a strong cluse that the two terms do not mean the same thing." *Id.* (citing *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (applying the "usual rule against ascribing to one word a meaning so broad that it assumes the same meaning as another statutory term"); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning.")).   Consistent with that principle, the court concluded that "[t]he text and structure of the statute suggest that the different terms have different meanings." *Id.*

The *Moore* court further grounded its analysis in Supreme Court precedent, relying on *Barr*, which treat it as self-evident that "[a] cellular phone and a residential phone are not the same thing," in the context of the TCPA.   *Id.* (noting "courts widely hold that a cell phone is not a 'residential telephone line'" under Section 227(b) and collecting cases).   As the court explained, "[*Barr*] involved robocalls to a cell phone in violation of subsection 227(b)(1)(A)(iii) of the TCPA . . . . The Supreme Court noted that a different provision governs calls to residential phones." *Id.* (citing *Barr*, 591 U.S. at 617, n.3 ("Plaintiffs have not challenged the TCPA's separate restriction on robocalls to home phones.  *See* 47 U.S.C. § 227(b)(1)(B).")).

Courts addressing related provisions have reached the same conclusion.  For example, in *Johnson v. Palmer Admin. Servs., Inc.*, the court recognized as significant the distinction between "residential" and non-residential devices.  *See Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-cv-00121, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022) (discussing the meaning of "residential telephone subscriber" under 47 C.F.R. § 64.1200(d).   Likewise, in the Do Not Call provision

context, courts consistently reject claims brought under Section 227(c) where the alleged calls were made only to a cellular phone., because that provision is limited to residential subscribers. *See Politi*, 2019 WL 2519702, at \*4 (collecting cases); *see also Gaker*, 2023 WL 2472649, at \*3; *Spectrum Tax Relief LLC*, 2017 WL 3222559, at \*6; *Enagic USA*, 2017 WL 2719992, at \*6 (M.D. Tenn. June 23, 2017).

The broader statutory scheme also reinforces the distinction between cell phones and residential telephones. Where Congress includes specific language in one provision but omits it in another, that difference must be respected. *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Here, Congress explicitly referenced "cellular telephone service" in Section 227(b), while limiting Section 227(c) to residential lines. The Supreme Court has recognized this divide, noting that different provisions address calls to cell phones and calls to home phones. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 617 n.3 (2020). Reading "residential telephone subscriber" to include cellular users would erase that distinction and render Congress's word choices meaningless. Courts have therefore declined to do so, emphasizing that different terms within the same statute are presumed to carry different meanings. *See Moore*, 2023 WL 8601528, at \*2.

Because Plaintiff alleges only communications to a cell phone, he does not fall within the class of persons Section 227(c) was designed to protect. This Court should follow the same reasoning and overrule the Recommendation.

### 3. FCC Interpretations Do Not Alter the Statute's Plain Meaning

Finally, the Recommendation should be rejected to the extent it relied upon or was influenced by case law that relied on FCC guidance, which expands the scope of Section 227(c) beyond the statutory text. (Dkt. 29 at 5–6.) The Supreme Court has made clear that statutory interpretation is ultimately the responsibility of the courts. *See Loper Bright*, 603 U.S. at 400. The key terms here are straightforward. Neither "telephone call" nor "residential telephone subscriber"

PAGE 9 – DEFENDANT CIRKUL'S OBJECTIONS TO FINDINGS AND
       RECOMMENDAITON

is ambiguous, and the FCC cannot redefine them to reach conduct Congress did not include. *See Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 313 (11th Cir. 2025); *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1083 (D.C. Cir. 2017).  For the same reason, decisions that relied on *Chevron* deference offer limited guidance.  In *Chennette v. Porch.com*, for example, the Ninth Circuit adopted the FCC's interpretation without independently analyzing the statutory text.  50 4th 1217, 1224–26 (9th Cir. 2022).  That approach is no longer tenable after *Loper Bright*.  Although some courts have taken a broader view (*see, e.g.*, *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 WL 1784815, at *2 (D. Or. June 27, 2025); *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274, at *5 (D. Or. July 21, 2025)), the more persuasive authority adheres to the statute's text and confines Section 227(c) to its stated scope.  *See Johnson v. Palmer Admin. Servs. Inc.*, No. 6:22-cv-00121, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022).

The Court should decline to rely on cases that improperly defer to FCC guidance, and therefore, reject the Recommendation.[1]

## IV.    CONCLUSION

For the reasons set forth above, Cirkul respectfully requests that the Court overrule the Recommendation, dismiss with prejudice the Complaint, and award such other and further relief in Cirkul's favor as the Court deems just and proper.

---

[1]    Cirkul also moved to dismiss the Complaint on the grounds that Plaintiff's use of the 9999 Number transforms it from a residential to a business line.  The Recommendation found Plaintiff's allegations that the 9999 Number was for "personal and household purposes" to be sufficient "to survive a motion to dismiss." (Dkt. 29 at 13.)  Cirkul reserves the right to challenge Plaintiff's allegation of personal use during the litigation.

PAGE 10 – DEFENDANT CIRKUL'S OBJECTIONS TO FINDINGS AND
          RECOMMENDAITON

DATED: April 28, 2026

TONKON TORP LLP


By:  */s/ Jeffrey G. Bradford*
Jeffrey G. Bradford, OSB No. 133080
jeff.bradford@tonkon.com
Telephone: (503) 802-5724

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti, *Pro Hac Vice*
lmazzuchetti@kelleydrye.com
Damon W. Suden, *Pro Hac Vice*
dsuden@kelleydrye.com
Frances V. McDonald, *Pro Hac Vice*
fmcdonald@kelleydrye.com

*Attorneys for Defendant Cirkul, Inc.*

PAGE 11 – DEFENDANT CIRKUL'S OBJECTIONS TO FINDINGS AND
    RECOMMENDAITON

## <u>L.R. 7-2 CERTIFICATION OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under L.R. 7-2(b) because it contains 2,856 words, including headings, footnotes, and quotations, but excluding the caption, signature blocks, and any certificates of counsel.

DATED: April 28, 2026

TONKON TORP LLP

By:  */s/ Jeffrey G. Bradford*
Jeffrey G. Bradford, OSB No. 133080
jeff.bradford@tonkon.com
Telephone: (503) 802-5724

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti, *Pro Hac Vice*
lmazzuchetti@kelleydrye.com
Damon W. Suden, *Pro Hac Vice*
dsuden@kelleydrye.com
Frances V. McDonald, *Pro Hac Vice*
fmcdonald@kelleydrye.com

*Attorneys for Defendant Cirkul, Inc.*