Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION FILE NO. 6:25-cv-2036 |
| Plaintiff, | : | |
| v. | : : : | DEMAND FOR JURY TRIAL |
| CIRKUL, INC. | : : | CLASS ACTION |
| Defendant. | : : : | |

_____ /

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## OBJECTIONS TO FINDINGS AND RECOMMENDATION

**INTRODUCTION**

Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers from intrusive and unwanted telemarketing practices that invade personal privacy and disrupt the sanctity of the home. Although communications technology has evolved since the statute's enactment in 1991, the harms Congress sought to prevent remain exactly the same. Today, telemarketers overwhelmingly target consumers through cellular telephones and text messaging rather than traditional residential landlines. Defendant's objections ask this Court to disregard both modern reality and binding Ninth Circuit precedent by artificially limiting the TCPA's protections to obsolete technologies that Congress never privileged in the statutory text.

The Magistrate Judge correctly rejected that invitation. After conducting a detailed analysis of the TCPA's language, structure, legislative purpose, FCC guidance, and governing appellate authority, Judge Potter concluded that the statute's Do Not Call provisions apply to marketing text messages sent to residential-use cellular telephones. (ECF No. 29 at *4–15.) That conclusion follows directly from binding Ninth Circuit precedent holding that text messages constitute "calls" under the TCPA and that wireless subscribers are presumptively "residential subscribers" entitled to the statute's protections. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009); *Howard v. Republican Nat'l Comm.,* 164 F.4th 1119 (9th Cir. 2026); *Chennette v. Porch.com,* 50 F.4th 1217 (9th Cir. 2022).

Defendant's objections identify no actual legal error in the Findings and Recommendation. Instead, Defendant largely repackages the same arguments already presented to—and carefully rejected by—the Magistrate Judge. Defendant asks this Court to assign the phrase "telephone call" one meaning in § 227(b) and an entirely different meaning in neighboring § 227(c), despite settled principles of statutory construction requiring identical terms

Response to Objection to Report and Recommendation    1

within the same statute to carry the same meaning absent clear congressional direction otherwise. Defendant likewise asks the Court to exclude modern residential cell phone users from TCPA protection even though Congress chose the broad term "residential telephone subscribers," not "landline users" or "residential telephone lines," in § 227(c).

At bottom, Defendant's interpretation would create a sweeping loophole that would substantially gut the TCPA's Do Not Call protections in the modern era. Under Defendant's view, telemarketers could repeatedly bombard consumers with unwanted marketing texts so long as those solicitations were sent to cell phones instead of landlines. Nothing in the TCPA's text, structure, purpose, or controlling precedent supports such an absurd result.

Because Plaintiff plausibly alleged that Defendant repeatedly transmitted unsolicited marketing text messages to his residential cellular telephone number despite its registration on the National Do Not Call Registry, and because the Magistrate Judge correctly concluded that those allegations state a valid claim under the TCPA, the Findings and Recommendation should be adopted in full.

## BACKGROUND

Plaintiff Chet Michael Wilson brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, arising from Defendant Cirkul Inc.'s delivery of repeated marketing text messages to his cellular telephone number despite its registration on the National Do Not Call Registry ("DNC Registry"). (ECF No. 1 ¶¶ 1, 19–20.)

Plaintiff is a natural person residing in Oregon and has been, at all relevant times, the subscriber to and customary user of cellular telephone number (541) XXX-9999. (Id. ¶¶ 8–10.) For at least five years, Plaintiff has used this number exclusively as his personal residential telephone number for personal and household purposes, in lieu of a landline telephone. (Id. ¶¶

Response to Objection to Report and Recommendation

11–15.) Plaintiff does not use this number for business or commercial purposes and is not reimbursed by any business for his cellular phone plan. (Id. ¶¶ 12–14.)

Plaintiff registered his telephone number on the National Do Not Call Registry at least thirty days before receiving the text messages at issue. (Id. ¶ 18.) Despite this registration, Defendant delivered, or caused to be delivered, at least six marketing text messages to Plaintiff's number during September and October 2025. (Id. ¶¶ 19–21.) The messages promoted Defendant's products and services, including product bundles, rewards programs, and subscription offerings. (Id. ¶ 21.)

The text messages were intended to advertise and market Defendant's business and services. (Id. ¶ 24.) Plaintiff did not provide Defendant with prior express consent or permission to send these marketing messages, nor did Plaintiff request information or promotional materials from Defendant. (Id. ¶¶ 25–26.) Although the messages were intended for someone other than Plaintiff, they were nevertheless delivered to Plaintiff's registered number. (Id. ¶ 23.)

As a result of Defendant's conduct, Plaintiff suffered an invasion of privacy, intrusion into his life, and private nuisance—the precise harms the TCPA's do-not-call provisions were enacted to prevent. (Id. ¶ 27.) Plaintiff brings this action individually and on behalf of a nationwide class of similarly situated individuals whose residential or cellular telephone numbers were registered on the DNC Registry and who nevertheless received multiple marketing calls or text messages from Defendant. (Id. ¶¶ 29–56.)

## LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews *de novo* those portions of the Findings and Recommendation to which objections are made. However, objections are not intended to provide a losing party with a second opportunity to relitigate arguments already presented to

Response to Objection to Report and Recommendation

and considered by the Magistrate Judge. *See United States v. Howell,* 231 F.3d 615, 621–22 (9th Cir. 2000).

Here, Defendant's objections merely recycle the same arguments presented in its Motion to Dismiss and its earlier briefing. (ECF No. 33 at *1–10.) The Magistrate Judge carefully analyzed those arguments and correctly rejected them after conducting an extensive review of the statutory text, the FCC's regulations, and governing Ninth Circuit precedent. (ECF No. 29 at *4–15.) Defendant's disagreement with that conclusion does not establish any legal error warranting rejection of the F&R.

<u>**ARGUMENT**</u>

I.      **THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT TEXT MESSAGES ARE "CALLS" UNDER § 227(c) BASED ON BINDING NINTH CIRCUIT PRECEDENT AND EVERY OTHER COURT IN THIS DISTRICT TO CONSIDER THE ISSUE.**

Defendant first objects to the F&R's conclusion that text messages qualify as "calls" under the TCPA's Do-Not-Call provisions. That objection fails for several independent reasons.

First, as the Magistrate Judge correctly recognized, Ninth Circuit precedent establishes that text messages are "calls" under the TCPA. (ECF No. 29 at *5–8.)

In *Satterfield v. Simon & Schuster, Inc.,* the Ninth Circuit expressly held "that a text message is a 'call' within the meaning of the TCPA." 569 F.3d 946, 954 (9th Cir. 2009). Since *Satterfield*, no Court in the Ninth Circuit has dismissed a TCPA case holding that a text message is not a call. The argument is foreclosed. Indeed, earlier this year in *Howard v. Republican Nat'l Comm.,* 164 F.4th 1119 (9th Cir. Jan. 13, 2026), the Ninth Circuit affirmed *Satterfield* in another TCPA case:

> The key question, then, is whether the sending of this text message involved (1) "mak[ing] a[ ] call" or "initiat[ing] a[ ] telephone call" to that phone number, (2) "using an artificial or prerecorded voice." *Id.*

> We have previously held that, under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), it was "reasonable" to defer to the FCC's conclusion that the term "call" in § 227 includes a "text message." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, we think it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) ("*Chevron* is overruled."). *Satterfield* emphasized two key points about statutory construction that supported the FCC's understanding of a "call," *see Satterfield*, 569 F.3d at 953–54, and even under de novo review, those same two points support the conclusion that a "text message" constitutes a "call" within the meaning of the TCPA… the RNC's text message was a 'call.'

*Id.* at 1123-1124. There's not much Cirkul can say to that analysis, so it instead claims that the Ninth Circuit's decision in *Howard*, however, was also limited to claims asserted under Section 227(b), rather than claims under Section 227(c). However, this was also addressed in *Wilson v. Better Mortg. Corp.,* 2025 U.S. Dist. LEXIS 251694, *14-15, 17, 19 (S.D. NY.):

> The Court holds, in accord with a growing consensus of case law, that § 227(c) of the TCPA applies to text messages for multiple reasons, developed below. In brief, although modern parlance tends to distinguish between phone calls and text messages, the meaning of "telephone call" in 1991—when the TCPA was enacted—was broad enough to encompass text messages. The overwhelming weight of authority holds that § 227(b), a neighboring section using the same term, covers text messages, and the meaning of "telephone call" in § 227(c) is at least as broad as that in § 227(b). The FCC has also interpreted both § 227(b) and (c) to apply to text messages…
>
> Section 227(b) of the TCPA uses the same term as § 227(c): "telephone call." And numerous federal courts of appeals have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages. *See, e.g.*, *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("Although the text of the statute refers only to 'calls,' we have held that, under the TCPA, that term encompasses text messages." (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013))); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021)

("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]."); *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."); *see also Satterfield*, 569 F.3d at 954 (deferring to FCC's reasonable interpretation of the TCPA "to hold that a text message is a 'call'")[6] ; *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) (holding, under § 227(b), that receipt of one unwanted text message caused concrete injury sufficient for Article III standing)…

The weight of the above authority concerning § 227(b) strongly suggests that § 227(c)'s parallel usage of "telephone call[s]" applies to text messages. "[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning." *Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 372-73 (2d Cir. 2022) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005)); *see also Pulsifer v. United States*, 601 U.S. 124, 149, 144 S. Ct. 718, 218 L. Ed. 2d 77 (2024) ("In a given statute, the same term usually has the same meaning."). Here, nothing indicates that Congress intended for the same term in § 227(c) to cover fewer modes of telephonic communications than that in § 227(b)…

The statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting subscribers from telephone solicitations, not on any one form of such solicitations. *See, e.g.*, *MEDVIDI*, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3; *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024). Given the weight of authority that § 227(b) covers text messages despite its narrower scope as to modes of technology than § 227(c), it logically follows that § 227(c) also covers text messages. Limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure. It would also be at odds with the Second Circuit's recognition that "the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA." *Melito*, 923 F.3d at 88.

In short, *Howard* confirms what Satterfield already made clear: a "call" under the TCPA includes a text message even under de novo review after *Loper Bright*. And because § 227(c) uses the same statutory term—"telephone call"—there is no textual basis to assign it a narrower meaning in the Do-Not-Call context than in the neighboring provisions of § 227(b). See also 47

Response to Objection to Report and Recommendation

C.F.R. § 64.1200(e) (confirming the FCC's rule applies to calls and text messages). Accordingly, whatever rhetorical distinction Defendant attempts to draw between § 227(b) and § 227(c), it cannot overcome controlling Ninth Circuit authority on the meaning of "call," and dismissal on that ground should be denied.

Second, the Magistrate Judge also independently analyzed the statutory text and correctly concluded that text messages fall within the ordinary meaning of a "telephone call." (ECF No. 29 at *7–9.) At the time Congress enacted the TCPA, a "telephone call" broadly meant a communication made by telephone. *Id.* Courts interpreting statutes must apply the ordinary public meaning of statutory terms at the time of enactment, not modern colloquial distinctions that developed decades later.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained above, the word "call" in the TCPA encompasses text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a 'call' within the meaning of the TCPA."). That interpretation follows from "the ordinary, contemporary, and common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed "[a]ny notice, word, or communication, no matter the mode and no matter how sent." *Message*, *Black's Law Dictionary* (6th ed. 1990).[1] So a "message" can be spoken *or* written. More

---

[1] *See also, e.g.*, *Message*, Webster's New Collegiate Dictionary (9th ed. 1991) ("a communication

generally, the definition of "telephone solicitation" focuses not on a communication's form but whether it has a commercial purpose. *See, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025). So, Congress presumably referred to "call or message" disjunctively in order to capture the broadest possible range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025).

Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But, as just explained, the statute *does* explicitly cover any "telephone solicitation," which is broadly defined to include any "call or message." 47 U.S.C. § 227(a)(4). That broad and inclusive definition governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024).

Defendant's authorities improperly rely on present-day conversational distinctions between "calls" and "texts." But as the F&R explained, both are communications transmitted via telephone service and both invade consumer privacy in precisely the same manner Congress sought to prevent. (ECF No. 29 at *8–9.) The TCPA's structure confirms this interpretation. Congress defined "telephone solicitation" broadly to include a "telephone call or message." 47

---

in writing, in speech, by signals"); *Message*, Oxford English Dictionary (2d ed. 1989) ("an oral or written communication sent from one person to another").

U.S.C. § 227(a)(4). That expansive language demonstrates that Congress intended § 227(c) to regulate unwanted telephonic communications generally, not merely live voice conversations.

Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day. As previously explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 FCC Rcd. 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm its "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

Judge McShane for this analysis correct when he held:

> The FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support. On the contrary, as technology has developed over the years, so too has our understanding of the TCPA's protections. *See 2003 Rules &*

Response to Objection to Report and Recommendation

*Reguls.*, 18 F.C.C. Rcd. at 14017 ("significant changes in the technologies and [*13] methods used to contact consumers . . . warrant modifications to our existing rules, and adoption of new rules if consumers are to continue to receive the protections that Congress intended to provide when it enacted the TCPA"). It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.

*Wilson v. Skopos Fin., LLC*, *12-13. This Court should do the same.

Defendant's interpretation also improperly assumes that Congress was required to specifically anticipate text messaging technology in 1991 in order for the statute to apply to it. But statutes routinely apply to later-developed technologies where the statutory language is broad enough to encompass them. The TCPA's language plainly is.

## II.    THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT § 227(c) APPLIES TO RESIDENTIAL-USE CELL PHONES, AGAIN AS REQUIRED BY THE NINTH CIRCUIT'S HOLDING.

Defendant next objects to the Magistrate Judge's conclusion that residential-use cell phones are protected under § 227(c). Again, the objection lacks merit.

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As the FCC and courts have long recognized, the ordinary meaning of the Do Not Call List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, *Chennette v. Porch.com*, 50 F.4th 1217, 1223–25 (9th Cir. 2022); 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (collecting cases).

Response to Objection to Report and Recommendation    11

Start with what the statute prohibits: unwanted "telephone solicitations." 47 U.S.C. § 227(c)(3). "Telephone solicitation" is a defined term. § 227(a)(4). In essence, it means "a telephone call or message" "which is transmitted to any person" for commercial purposes. *Id.*[2] Solicitations to cell phones fit that definition, which reflects no focus on any particular phone technology. First, to state the obvious, a cell phone is a "telephone." *See, e.g.*, 47 U.S.C. § 227(b)(1)(A)(iii) (using the phrase "cellular telephone"). The word "transmitted" also conveys no preference: "Transmit" means "to send a signal *by radio waves or by wire*." *Transmit*, Webster's College Dictionary (9th ed. 1991) (emphasis added). Nor does the word "message," which means "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*, from one person to another." *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added). Finally, "any person" has a "naturally broad and inclusive meaning." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978).

Next, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. § 227(c)(1), (3). That phrase, too, conveys no technological limitation. For starters, a person can be a "telephone subscriber" to any telephone service, either wired or wireless; a "subscriber" is anyone who pays for a service. *Cacho*, 739 F. Supp. 3d at 206–07; *Wilson v. Hard Eight Nutrition LLC*, 2025 WL 1784815, at *5 (D. Or. 2025).

---

[2] Here is the full definition: "The term 'telephone solicitation' means the initiation of *a telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, *which is transmitted to any person*, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4) (emphases added).

That leaves the word "residential," which Cirkul's argument hinges on. That word doesn't exclude cell phone subscribers either. As used in the TCPA "residential" is just the opposite of "business." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359, at *3 (N.D. Ga. 2025). It refers to the purposes for which a phone is used, not its physical characteristics or location. *See Hard Eight*, 2025 WL 1784815, at *5–6. So "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206. Many cell phone subscribers, including Mr. Wilson, fit that description.

That meaning of "residential" also aligns with the "express aim" of the Do Not Call List: to protect residential subscribers' "'privacy rights.'" *Hard Eight*, 2025 WL 1784815, at *6 (*quoting* 47 U.S.C. § 227(c)(1), (2)). That shows that "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those personal privacy interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman v. QuinStreet, Inc.*, 2024 WL 3406992, at *4 (N.D. Cal. 2024).

Between 1991 and 2003, Congress legislated several times to clarify the status of cell phones, making clearer and clearer that it wanted them to be protected by § 227(c).

In 1996, Congress updated the definition of "telephone exchange service." *See* Telecommunications Act of 1996, Pub. L. No. 104-104, § 3(a)(1)(B), 110 Stat. 56, 58 (1996). "Telephone exchange service" is also a defined term in the Telecommunications Act. *See* 47 U.S.C. § 153(54). And as with "common carrier," the TCPA uses "telephone exchange service" to describe companies whose "subscribers" are eligible for Do Not Call List protection. *See* 47

Response to Objection to Report and Recommendation                    12

U.S.C. § 227(c)(3)(B), (C). The 1996 legislation clarified that this term, too, refers to both landline and cell phone service. *See* 11 FCC Rcd. 15499, 16000 ¶ 1014 (1996); *GTE Serv. Corp. v. FCC*, 224 F.3d 768, 769, 774–75 (D.C. Cir. 2000).

In March 2003, Congress passed the Do Not Call Implementation Act, which sent a clear signal that Congress understood § 227(c) to protect cell phone subscribers. *See* Pub. L. No. 108-10, 117 Stat. 557 (2003). At the time, the FCC had started, but not yet finished, its rulemaking to establish a national Do Not Call List. *See* 17 FCC Rcd. 17459 (2002). Meanwhile, the Federal Trade Commission had recently finalized its own do-not-call regulations. *See* 68 Fed. Reg. 4580, 4671–72 (Jan. 29, 2003). Eager to get a national Do Not Call List up and running, Congress directed the FCC to complete its rulemaking, and, in "issuing such rule," to "maximize consistency with" a specific FTC regulation: "16 C.F.R. § 310.4(b)." Pub. L. No. 108-10, § 3, 117 Stat. 557, 557 (2003). That regulation granted do-not-call protection to any "telephone number," including cell phone numbers. *See* 16 C.F.R. § 310.4(b)(1)(iii)(B); 68 Fed. Reg. at 4672.

As the Magistrate Judge explained, Congress used materially different language in § 227(b) and § 227(c). (ECF No. 29 at *10–11.) Section 227(b) refers to "residential telephone lines," while § 227(c) protects "residential telephone subscribers." Congress plainly knew how to limit protections to a particular transmission technology when it wished to do so. Its decision not to use "line" language in § 227(c) must be given effect. The ordinary meaning of "subscriber" encompasses cellular subscribers. Likewise, "residential" refers to the purpose for which the phone is used, not the technology through which communications are transmitted. (ECF No. 29 at *11.)

Response to Objection to Report and Recommendation    13

That interpretation is fully consistent with modern reality. Millions of Americans use cell phones as their sole residential telephones. Defendant's interpretation would arbitrarily deny those consumers the very privacy protections Congress enacted the TCPA to provide. Judge Aiken's decision is consistent with the reasoning of every District Court following *McLaughlin* to analyze this question:

> Section 227(c) does not refer to any kind of transmission technology; it does not refer to "residential telephone *line*" or "landline" or "line." And Congress knew how to denote line-transmission technology because it did so in Section 227(b). "Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone *line*,' as Congress used that term in the preceding subsection."
>
> Second, Defendant's interpretation conflicts with the plain language of the statute. "[A] fundamental canon of construction provides that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Defendant argues that the phrase "residential telephone subscribers" means residential landlines, but Defendant's interpretation does not conform with the ordinary, contemporary, and common meaning of "residential telephone subscribers." In 1991, when the TCPA was enacted, a subscriber was defined as one who "agree[s] to receive a periodical or service regularly[]…
>
> The do-not-call provision's sole and express aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Courts have long recognized the importance of residential privacy interests.
>
> Defendant's interpretation would protect the privacy interest of a home landline subscriber but not a home cellular subscriber—even when a cell phone is the sole phone for home use, as is increasingly the case. Defendant effectively ties residential privacy interests to an obsolete and disappearing transmission technology. But "[t]hose privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. Quinstreet, Inc.*, No. 23-CV-05056-PCP, 2024 U.S. Dist. LEXIS 123132, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). There is no evidence that a call or message transmitted by a cell tower is less intrusive than a call or message delivered by a land line. Defendant's attempt to define away the privacy interests [*17] that Congress specifically sought to protect yields an absurd result.

*Wilson v. Hard Eight Nutrition LLC*, *11-12, *14, *16-17. D

Again, the Ninth Circuit has spoken on an issue that the Defendant has disagreed with the Magistrate Judge on. In *Chennette v. Porch.com,* the Ninth Circuit recognized that wireless subscribers are presumptively "residential subscribers" under § 227(c). 50 F.4th 1217, 1225 (9th Cir. 2022). The Magistrate Judge correctly relied on *Chennette* in rejecting Defendant's argument. (ECF No. 29 at *12.) Defendant's contrary interpretation would exclude vast numbers of modern consumers from the TCPA's protections solely because they no longer maintain traditional landlines. Nothing in the statutory text supports such a result, and the Court should decline Defendant's invitation to rewrite the statute.

## CONCLUSION

Defendant's objections ultimately ask this Court to do what neither Congress nor the Ninth Circuit has done: carve modern telemarketing practices out of the TCPA's consumer protections by tethering residential privacy rights to outdated technological distinctions that appear nowhere in the statute. The Court should decline that request.

The TCPA was enacted to protect consumers from unwanted telemarketing intrusions, regardless of whether those intrusions arrive through a traditional voice call or a text message, and regardless of whether consumers use a landline or a residential-use cellular telephone. Judge Potter correctly recognized that the statute's text, structure, purpose, FCC regulations, and binding Ninth Circuit precedent all compel that conclusion. (ECF No. 29 at *4–15.) Defendant's objections identify no meaningful flaw in that analysis. Instead, they merely repeat arguments that courts across the country—and particularly within the Ninth Circuit—have consistently rejected.

Defendant's interpretation would produce untenable results. It would exclude millions of modern consumers from the TCPA's protections solely because they no longer maintain

traditional landlines. It would permit telemarketers to evade the National Do Not Call Registry through text-message campaigns even though text messages create the very same invasions of privacy Congress sought to prevent. And it would create the irrational asymmetry recognized by numerous courts whereby text messages qualify as "calls" under one section of the TCPA but somehow cease being "calls" under another neighboring provision using the identical statutory language.

The law does not support any of those outcomes. The TCPA protects consumers from invasive telemarketing practices, not merely certain forms of transmission technology. Plaintiff plausibly alleged that Defendant repeatedly sent unsolicited marketing text messages to his residential-use cellular telephone despite its registration on the National Do Not Call Registry. Those allegations fall squarely within the conduct prohibited by § 227(c).

For all of these reasons, Plaintiff respectfully requests that the Court overrule Defendant's objections, adopt the Findings and Recommendation in full, deny Defendant's Motion to Dismiss, and permit this action to proceed on the merits.

Dated: May 11, 2026

PLAINTIFF, on behalf of himself
and others similarly situated,

*s/Andrew Roman Perrong*
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
*Lead Attorney for Plaintiff and the Proposed Class*

Response to Objection to Report and Recommendation

/s/ Anthony I. Paronich
Anthony I. Paronich
(*Pro Hac Vice*)
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF WORD COUNT

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: May 11, 2026.

/s/ Anthony I. Paronich
Anthony I. Paronich

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date.

Dated: May 11, 2026

/s/ Anthony I. Paronich
Anthony I. Paronich
(*Pro Hac Vice*)
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

Response to Objection to Report and Recommendation                    17

*Counsel for Plaintiff and the Proposed Class*